Lillian S. McGILL et al., Plaintiffs,

v.

C. F. RYALS, individually and as Sheriff of Lowndes County, Alabama et al., Defendants.

Civ. A. No. 2322-N.

United States District Court
M. D. Alabama, N. D.

March 31, 1966.

Vernon Z. Crawford, Mobile, Ala., Morton Stavis, of Stavis, Richardson, Koenigsberg & Rossmoore, Newark, N. J., William M. Kunstler and Arthur Kinoy, of Kunstler, Kunstler & Kinoy, New York City, David Einhorn, Passaic, N. J., and Benjamin E. Smith, New Orleans, La., for plaintiffs.

John C. Godbold and Truman Hobbs, of Godbold, Hobbs & Copeland, Montgomery, Ala., for defendants.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

JOHNSON, District Judge.

Plaintiffs, who are Negroes, sue individually and, pursuant to Rule 23(a), Federal Rules of Civil Procedure, on behalf of all Negro citizens eligible to vote in Lowndes County, Alabama.

Jurisdiction is conferred on this Court by §§ 1343 and 1344, Title 28, U.S.C., and §§ 1971, 1981, and 1983, Title 42, U.S.C.

Plaintiffs allege an array of constitutional violations which collectively, they assert, have enabled the minority white population to seize and retain all the political power of Lowndes County, Alabama, and thereby exclude the Negro population from participation in the administration of County affairs or the selection of its government. Specifically,

plaintiffs allege that they have been denied their rights contrary to the Fourteenth and Fifteenth Amendments, and the congressional enactments designed to effectuate those amendments.

The relief prayed for is as follows:

(A) A declaration that the defendant officeholders purporting to hold office in Lowndes County have been illegally elected thereto, and declaring vacant each of such offices.[1]

(B) A decree allowing said defendants to continue to hold such offices as de facto officers until certification of the results of general elections of 1966.

(C) An order that in the next general elections to be held under the laws of the State of Alabama in November, 1966, the following unexpired terms of the following offices be filled in addition to those otherwise prescribed by Alabama law: the offices of members of the Board of Revenue and County Superintendent of Schools to be filled for the unexpired term up to the general elections of 1968, and the offices of Circuit Judge, Circuit Clerk, and Probate Judge to be filled for the unexpired term up to the general elections of 1970.

The case is now submitted upon the defendants' motion to dismiss.

It is important to recognize, at the outset, that this and other courts have long sought to protect the Negro from the variety of schemes designed to deprive Negroes of their right to vote and participate in our representative system of government. Thus, "Grandfather" clauses were invalidated in Guinn v. United States, 238 U.S. 347, 35 S.Ct. 926, 59 L.Ed. 1340 (1915), and Myers v. Anderson, 238 U.S. 368, 35 S.Ct. 932, 59

L.Ed. 1349 (1915); procedural hurdles were struck down in Lane v. Wilson, 307 U.S. 268, 59 S.Ct. 872, 83 L.Ed. 1281 (1939); the "white primary" was outlawed in Smith v. Allwright, 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944), and Terry v. Adams, 345 U.S. 461, 73 S.Ct. 809, 97 L.Ed. 1152 (1953); improper challenges were nullified in United States v. Thomas, 362 U.S. 58, 80 S.Ct. 612, 4 L.Ed.2d 535 (1960); racial gerrymandering was forbidden by Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); discriminatory application of voting tests was condemned in Schnell v. Davis, 336 U.S. 933, 69 S.Ct. 749, 93 L.Ed. 1093 (1949); State of Alabama v. United States, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962); and Louisiana v. United States, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965); and, in a recent decision, this Court invalidated the Alabama poll tax whose purpose, we concluded, "was born of an effort to discriminate on the basis of race [and] * * * color." United States v. Alabama, 252 F.Supp. 95 (M.D. Ala., March 3, 1966). See also, State of South Carolina v. Katzenbach, 86 S.Ct. 803 (March 7, 1966); United States v. Duke, 332 F.2d 759 (5th Cir. 1964); United States v. Ward, 345 F.2d 857 (5th Cir. 1965); United States v. Lynd, 349 F.2d 785 (5th Cir. 1965); United States v. Ward, 349 F.2d 795 (5th Cir. 1965); United States v. Ramsey, 353 F.2d 650 (5th Cir. November 12, 1965); Hamer et al. v. Campbell et al., 358 F.2d 215 (5th Cir. March 11, 1966); Sims v. Baggett, 247 F.Supp. 96 (M.D.Ala.1965).

██ It is clear from these opinions that this Court has broad equitable powers to prevent future discriminatory

---

1. The offices sought to be declared vacant are:

 (1) The Sheriff (Title 17, § 68, Code of Alabama), the Coroner (Title 17, § 68), the Tax Assessor (Title 17, § 68), the Tax Collector (Title 17, § 68), and the District Attorney (Title 17, § 74), whose terms would normally be filled at the general election in November, 1966.

 (2) Members of the Board of Revenue (Title 17, § 69) and the County Superintendent of Education (Title 52, § 107

[1]), whose four year terms are to be filled at the general election in 1968.

 (3) Circuit Judge (Title 17, § 67), Clerk of the Circuit Court (Title 17, § 72), and Probate Judge (Title 17, § 72), all having six year terms to be filled at the general election in 1970.

 (4) County Solicitor, whose term is to be filled at the general election in 1968.

 (5) Two Members of the County Board of Education (Title 17, § 70).

practices, as well as to eliminate the effects of past discrimination. Accordingly, in the case of United States v. State of Louisiana, 225 F.Supp. 353 (E.D. La.1963), aff'd 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709 (1965), the trial court stated:

> The cessation of prior discriminatory practices cannot justify the imposition of new and onerous requirements, theoretically applicable to all, but practically affecting primarily those who bore the brunt of previous discrimination. *An appropriate remedy * * * should undo the results of past discrimination* as well as prevent future inequality of treatment. *A court of equity is not powerless to eradicate the effects of former discrimination.* If it were, the State could seal into permanent existence the injustices of the past. 225 F.Supp. at 393. (Emphasis added.)

These views were reiterated in the recent case of Hamer et al. v. Campbell et al., supra:

> There can be no question that a District Court has the power to enjoin the holding of an election. In [State of] Alabama v. United States, 5 Cir., 1962, 304 F.2d 583, we emphasized the broad equitable powers of the District Court to mold relief sufficient to wipe out the effects of racial discrimination. 358 F.2d at 221.

The court in *Hamer* then voided an election in order to allow petitioners therein to become registered after having first determined that the District Court should have enjoined the election in the first instance.

 It is clear, therefore, that the issue which confronts this Court is not whether we have the power to grant the relief which plaintiffs ask, but whether, based on the allegations in the complaint (which, on a motion to dismiss, we must accept as true), it is appropriate to do so. We know of no mechanistic formula to apply, nor compelling legal argument which can help us make this determination. The facts speak for themselves: the equities are substantial on both sides. On balance, however, we conclude that, although the wrongs suffered are grievous, the motion to dismiss must be granted. We find the following reasons, taken together, persuasive that this is the proper disposition of the case:

 First, the community has a substantial interest in stable elections and the prompt determination of their validity. In this regard, it is important to point out that no relief was sought prior to the elections attacked, nor was relief sought within a reasonable time thereafter. Although we recognize that from a practical standpoint plaintiff's right to vote was greatly enhanced by the 1965 Voting Rights Act, the discussion and cases cited above make it clear that plaintiffs were not without remedies prior to the passage of the Act. Had resort been made to the courts at these earlier dates, the wrongs complained of could not have accumulated to the extent that they have. It is important also to note that the court in Hamer et al. v. Campbell et al., supra, made the following distinction between cases like the one presently before this Court and the one involved therein:

> This action does not mean that we necessarily would set aside every election in which a substantial number of citizens have been denied the right to vote. *This is not a case where an election is challenged for the first time after it is held.* Here appellants attempted to enjoin the election, and failing where they should have succeeded, they were diligent in seeking to have this failure rectified by our reversal prior to the election. Our absence of facilities to rectify rapidly should not now prevent us according full relief to appellants. 358 F.2d at 222. (Emphasis added.)

Second, as the cases cited above make clear, there are several remedies presently available to plaintiffs which, al-

though prospective in their operation, would serve to alleviate the effects of past discrimination. One such device is the so-called freezing technique which helps to allow deprived Negroes a chance to catch up and to participate in the electoral process on the same basis on which white citizens have participated. See Hamer et al. v. Campbell et al., supra. The "freezing" doctrine was first used in the field of voting to eliminate the effects of past discrimination, United States v. State of Alabama, 192 F.Supp. 677 (M.D.Ala.1961), aff'd 304 F.2d 583 (5th Cir.), aff'd per curiam, 371 U.S. 37, 83 S.Ct. 145, 9 L.Ed.2d 112 (1962). Additional remedies include direction by the court to register named individuals, or the appointment of referees. Aside from judicial remedies, the Voting Rights Act of 1965, Public Law 89–110, 79 Stat. 437, whose purpose is "to banish the blight of racial discrimination in voting, which has infected the electoral process in parts of our country for nearly a century," State of South Carolina v. Katzenbach, supra, provides cogent remedies against past discrimination.[2] Thus, although overturning the results of past elections would clearly be the most immediately effective remedy, it is not the only remedy which would ease the effect of past discrimination.

Third, the disruptive effect on the orderly transition of government would be considerable. Planning and the orderly administration of public affairs over the long run would in particular be affected. We think this is particularly so at the local level of government which is charged with the difficult problems of carrying out a host of programs ranging from state and federal to those initiated by the local governments themselves. It would be unfair to the community if these plans now had to be suddenly dropped or taken up by those who are not familiar with their details. This is particularly so with respect to the Board of Education, whose staggered manner of electing its members provides for continuity, and allows the valuable experience of the older members to be imparted, with a minimum of disruption, to those newly elected.

Fourth, the plaintiffs' contention that "unless relief is granted by this Court, the majority of the people in Lowndes County will continue until 1970 to be ruled by persons who have been elected by a small minority of persons who usurped power by unconstitutional means," is misleading. There will be elections this year and in 1968. Therefore, a clear majority of the offices which plaintiffs seek to have declared vacant will be determined within a period of less than two and one-half years in elections in which plaintiffs will have the right to participate fully. Thus, the inability of plaintiffs to participate in the election of their representatives is not as great as they assert in their complaint and brief.

These foregoing several reasons dictate that the exigencies must be extraordinary indeed before a court should upset elections which occurred, in some instances, nearly six years ago. These foregoing several reasons further dictate that the exigencies here presented are not "extraordinary."

For the reasons stated, it is the order, judgment and decree of the Court that the motion to dismiss this cause be and the same is hereby granted.

It is further ordered that this cause be and the same is hereby dismissed.

It is further ordered that the costs incurred herein be and they are hereby taxed against the plaintiffs, for which execution may issue.

---

2. We do not suggest that the remedy of election invalidation is under no circumstances available. The Voting Rights Act did not pre-empt this Court's normal powers of equity. See, e. g., Hamer et al. v. Campbell et al., supra.