Aaron **SELLERS**, Wilbert Thomas, Ed Hall, Paul T. Mitchell, Benjamin Jordan, Ben McGhee, and Booker T. Walker, Plaintiffs,

v.

John C. **TRUSSELL**, Jr., George E. Blue, R. C. Green, and J. R. Graham, as members of Bullock County Court of County Commissioners, Hon. Fred D. Main, as Probate Judge of Bullock County, Alabama, and as Special Judge of the Bullock County Court of County Commissioners, and John Allen Crook, as Chairman of the Bullock County Democratic Executive Committee, Defendants.

**UNITED STATES** of America, Plaintiff,

v.

John Allen **CROOK**, as Chairman of the Bullock County Democratic Executive Committee, Walter Ellis, as Secretary of the Bullock County Democratic Executive Committee, Fred D. Main, as Judge of Probate for Bullock County, Alabama, and the State of Alabama, Defendants.

Civ. A. Nos. 2361–N, 2373–N.

United States District Court
M. D. Alabama, N. D.

April 15, 1966

Civ. A. No. 2361–N:

Gray & Seay, Montgomery, Ala., and Jack Greenberg, New York City, for plaintiffs.

Maury D. Smith and Stanley B. Sikes, of Goodwyn & Smith, Montgomery, Ala., for defendants.

Civ. A. No. 2373–N:

John Doar, Asst. Atty. Gen., John M. Rosenberg and Brian K. Landsberg, Attys., U. S. Dept. of Justice, Washington, D. C., and Ben Hardeman, U. S. Atty., Montgomery, Ala., for plaintiff.

Richmond M. Flowers, Atty. Gen. of Alabama, and Gordon Madison, Asst. Atty. Gen. of Alabama, Montgomery, Ala., for defendant State of Alabama.

Maury D. Smith and Stanley B. Sikes, of Goodwyn & Smith, Montgomery, Ala., for remaining defendants.

Before RIVES, Circuit Judge, and GROOMS and JOHNSON, District Judges.

RIVES, Circuit Judge:

I.

These two actions were consolidated pursuant to Rule 42(a), Federal Rules of Civil Procedure, by order dated March 31, 1966. Each action seeks to enjoin the enforcement of Alabama Act No. 536 (Regular Session, 1965) as violative of the Constitution and laws of the United States. Both cases are now submitted on motion for interlocutory injunction and also for final judgment.

Act No. 536 changes the term of office of County Commissioners in Bullock County, Alabama, from four to six years. It undertakes to extend by two years the terms of the incumbent Commissioners, so that the terms of the Commissioners representing Districts 2 and 4 would end in 1969, instead of 1967, and the terms of the Commissioners representing Districts 1 and 3 would end in 1971, instead of 1969. Acting pursuant to Act No. 536, the defendants are foregoing the holding of any elections for Commissioners in Bullock County in 1966.

Commissioners for Districts 2 and 4 were elected in 1962; those for Districts 1 and 3 were elected in 1964. But for the passage of Act No. 536, elections for the Democratic nominations for Commissioners for Districts 2 and 4 would take place on May 3, 1966, with a run-off, if necessary, on May 31, 1966.

Over a substantial period of time, Negroes in Bullock County were denied the right to vote on account of race, as is indicated by the following registration statistics:

| Year | Persons Registered | | Voting Age Population 1960 | |
|------|------|------|------|------|
|      | W | N | W | N |
| 1960 | 2266 | 5 | 2387 | 4450 |
| 1962 | 2408 | 886 | 2387 | 4450 |
| 1964 | 2727 | 1423 | 2387 | 4450 |
| 1966 | 2993 | 2845 | 2387 | 4450 |

Notwithstanding this history of discrimination against Negroes in Bullock County, the evidence introduced by the defendants has convinced this Court that Act No. 536 was not discriminatorily motivated. On May 14, 1965, House Bill 212 was introduced in the Alabama House of Representatives providing for a six-year term of office for County Commissioners throughout the State of Alabama, and further providing for the extension for two years of the terms of office of all incumbents who had been elected to four-year terms. That Bill died in committee. That Bill was initiated by Judge Winston Stewart, the Executive Director of the Association of County Commissioners. Judge Stewart testified at length as to the purposes of that Bill, among others: that it was intended to keep more experienced men in office, to provide for greater incentive for qualified persons to seek the office in view of the modest pay of the office, to provide more time for the planning of county roads, and to keep the road crews from being fired so frequently by reason of the change of Commissioners. Judge Stewart testified that there was no discussion as to race before the Commissioners' Association or in any other way in the planning or preparation of the Bill. House Bill No. 212 was prepared at Judge Stewart's request by Mr. Charles Cooper of the Alabama Legislative Reference Service.

■ When it became apparent that that Bill would die in committee, Mr. James L. Paulk, the Representative from Bullock County, Alabama, had Mr. Cooper prepare a local bill modeled after the general bill but limited to Bullock County. On June 3, 10, 17 and 24, pursuant to Alabama law concerning local acts, a proposed bill to change the terms of office of Bullock County Commissioners was published in the Union Springs Herald, and on July 27 the bill (Senate Bill No. 529) was introduced by Senator Ed Reynolds, the Senator representing Macon and Bullock Counties. Senator Reynolds testified that there was no discussion or consideration of race in the preparation of the bill, and Representative Paulk testified that there was no mention of the race issue and that the race question did not enter into his thinking. Judge Stewart, Representative Paulk and Senator Reynolds are credible witnesses and their testimony stands uncontradicted, except by inferences which the plaintiffs ask the Court to draw from the racially discriminatory history of Bullock County and other circumstances. We do not feel justified in drawing such inferences but believe the testimony of the named witnesses. We, therefore, find that there were legitimate purposes for the enactment of Act No. 536 and that it was not enacted because of racially discriminatory motives.

## II.

That finding, however, does not dispose of these cases in view of the readily apparent discriminatory *effect* of Act No. 536. Act No. 536 freezes into office for an additional two years persons who were elected when Negroes were being illegally deprived of the right to vote. Under such circumstances, to freeze elective officials into office is, in effect, to freeze Negroes out of the electorate. That is forbidden by the Fifteenth Amendment. See Louisiana v. United States, 1965, 380 U.S. 145, 154, 155, 85 S.Ct. 817, 13 L.Ed.2d 709, affirming United States v. Louisiana, E.D. La. 1963, 225 F.Supp. 353, 397; Hamer v. Campbell, 5 Cir. 1966, 358 F.2d 215, decided March 11, 1966; McGill, et al. v. Ryals, et al., M.D.Ala., 253 F.Supp. 374, decided March 31, 1966; United States v. Duke, 5 Cir. 1963, 332 F.2d 759; compare Gomillion v. Lightfoot, 1960, 364 U.S. 339, 347, 81 S.Ct. 125, 5 L.Ed.2d 110.

■ This opinion and the decree entered in these consolidated cases shall have no effect on any part of said Alabama Act No. 536, except that part which extends the terms of the incumbent Commissioners. We hold that that part is violative of the Fifteenth Amendment to the Constitution of the United States.

## III.

Further, Act No. 536 is in conflict with Section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c. The Voting Rights Act of 1965 became law on August 6, 1965, and Act No. 536 was enacted into law two weeks later, on August 20, 1965. Meanwhile on August 7, 1965, the remedial sections of the Voting Rights Act of 1965 became applicable to Alabama, when the Attorney General determined that on November 1, 1964 the State maintained a "test or device" and the Director of the Census determined that less than 50% of its voting age residents were registered on November 1, 1964, or voted in the Presidential Election of November 30, 1964, Federal Register 9897 (1964). Neither the State of Alabama nor any of its authorized agents or officials have sought a declaratory judgment respecting Act No. 536 or have submitted Act No. 536 to the Attorney General of the United States, pursuant to 42 U.S.C. § 1973c, which reads as follows:

"§ 1973c. *Alteration of voting qualifications and procedures; action by state or political subdivision for declaratory judgment of no denial or abridgement of voting rights; three-judge district court; appeal to Supreme Court*

"Whenever a State or political subdivision with respect to which the prohibitions set forth in section 1973b(a) of this title are in effect shall enact or seek to administer any voting qualifi-

cation or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, such State or subdivision may institute an action in the United States District Court for the District of Columbia for a declaratory judgment that such qualification, prerequisite, standard, practice, or procedure does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, and unless and until the court enters such judgment no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure: *Provided,* That such qualification, prerequisite, standard, practice, or procedure may be enforced without such proceeding if the qualification, prerequisite, standard, practice, or procedure has been submitted by the chief legal officer or other appropriate official of such State or subdivision to the Attorney General and the Attorney General has not interposed an objection within sixty days after such submission, except that neither the Attorney General's failure · to object nor a declaratory judgment entered under this section shall bar a subsequent action to enjoin enforcement of such qualification, prerequisite, standard, practice, or procedure. Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28 and any appeal shall lie to the Supreme Court."

A close question is presented as to whether Alabama must follow the procedures of that section in order to extend the terms of office of incumbent Bullock County officials and to postpone elections for two years. The question is whether Act No. 536 comes within the following language used in Section 5 of the Voting Rights Act of 1965: "any voting qualifications or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in

force or effect on November 1, 1964." As originally introduced, Section 5 mentioned only "qualifications" and "procedures." The legislative history shows that the present language was meant to broaden the section and to make it all-inclusive of any kind of practice. Senate Hearings 191, 192, House Hearings 192, 89th Cong., 1st sess. Postponing an election by extending the terms of office of elected officials is within the phrase "any voting qualifications or prerequisite to voting, or standard, practice, or procedure with respect to voting," as used in Section 5 and, hence, the change embodied in Act No. 536 is covered. Act No. 536 embodies a practice or procedure respecting voting. It was enacted after the remedial sections of the Voting Rights Act of 1965 became applicable to Alabama, and the State of Alabama has not followed the procedures required by Section 5 of that Act, heretofore quoted. It follows, therefore, that that part of Alabama Act No. 536 of the Regular Session of 1965 which extends the terms of the incumbent Commissioners is violative of said Section 5.

■ GROOMS, District Judge, concurs in that part of the opinion under Roman numeral I but dissents as to that part of the opinion under Roman numerals II and III, and dissents from the decree and from the issuance of the injunction.

JOHNSON, District Judge (specially concurring:)

■ I concur except I do not find it necessary to reach the question of the applicability of § 5 of the 1965 Voting Rights Act. I think that under the facts and circumstances of this case the Fifteenth Amendment provides a more appropriate and substantial basis upon which the issues presented must be resolved.

Nor can I concur in the finding that there was no racially discriminatory motivation in the passage of Act 536. The history of voting discrimination against

Negroes over a substantial period of time in Bullock County on the part of the State of Alabama and Bullock County officials, as reflected by the evidence in this case and as judicially found to exist in Sellers v. Wilson, D.C., 123 F.Supp. 917 (1954) and in United States v. Alabama, D.C., 252 F.Supp. 95 (also see orders of September 13, 1961, July 26, 1962, and April 27, 1965), has been systematic, intentional, invidious, and in clear violation of the Fifteenth Amendment. Any determination in this case of legislative motive must be viewed in this light. Viewing Act 536 in such light, leads me, in the absence of any reasonable explanation for its passage, to the firm conclusion that its introduction and passage was racially motivated. The explanation for the introduction of the proposed statewide bill—which did not even get out of the House Committee—cannot serve, in the absence of some such testimony, as an explanation for the introduction and passage of local Act 536. Certainly, with this background, with the evidence in this case, and where the manifest consequences and clear effect of legislation is discriminatory, an inference of a purpose to discriminate is compelling. This is the clear teaching of Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125 (1960); Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); United States v. State of Alabama, 304 F.2d 583 (5th Cir. 1962); and Sims v. Baggett, 247 F.Supp. 96 (M.D. Ala. 1965). A passage from the *Sims* opinion amply illustrates this point:

> With the pattern and practice of discrimination in Alabama as a backdrop, the cavalier treatment accorded predominately Negro counties in the House plan takes on added meaning. The court is permitted to find the intent of the Legislature from the consistency of inherent probabilities inferred from the record as a whole. We, therefore, hold that the Legislature intentionally aggregated predominately Negro counties with predominately white counties for the sole purpose of preventing the election of Negroes

to House membership. The plan adopted by the Legislature can have no other effect. 247 F.Supp. at 109.

The facts and law of this case, to me, require the finding and conclusion of racially discriminatory motivation behind Act 536.