Mary C. SMITH et al., Plaintiffs,

v.

T. W. PARIS et al., Defendants.

Civ. A. No. 2393-N.

United States District Court
M. D. Alabama, N. D.
Aug. 22, 1966.

Fred D. Gray, of Gray & Seay, Montgomery, Ala., and Jack Greenberg, New York City, and Henry M. Aronson, Jackson, Miss., for plaintiffs.

Preston C. Clayton, Eufaula, Ala., for defendants.

## MEMORANDUM OPINION AND ORDER

JOHNSON, District Judge.

Plaintiffs, who are Negroes, were candidates for the Barbour County Democratic Executive Committee and were qualified electors within Barbour County. They sue individually and, pursuant to Rule 23(a), Federal Rules of Civil Procedure, on behalf of all Negro citizens eligible to vote in Barbour County, Alabama.

Plaintiffs allege that the defendant members of the Barbour County Democratic Executive Committee, in their official capacities, have deprived plaintiffs, and the members of the class they represent, of their constitutional rights under the Fourteenth and Fifteenth Amendments and the congressional enactments designed to effectuate those amendments. Specifically, plaintiffs aver that these defendants, by changing the method of electing members to the Executive Committee from a beat basis to an at-large basis, have invidiously discriminated against Negroes in the exercise of their franchise by making it impossible for any of the Negro candidates to be elected in the May 3, 1966, election.

Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343 and 1344, and by 42 U.S.C. §§ 1971 and 1981.

In addition to asking that the action of the Executive Committee be declared unconstitutional, plaintiffs also ask this Court to reinstate the rule providing for electing members to the county committee on a beat-by-beat basis, set the election of May 3 aside and require a new election, and enjoin defendants from any further use of the new method of electing its members.

A temporary restraining order to halt the election was sought only several hours before the May 3 election. This was denied on the basis that it was not timely filed because the election had already commenced and the plaintiffs had had ample time in which to present said motion to the Court. See Hamer et

al. v. Campbell et al., 358 F.2d 215 (5th Cir. 1966); McGill et al. v. Ryals et al., 253 F.Supp. 374 (M.D.Ala.1966).

At the hearing of this case on June 30, 1966, the parties stipulated the facts and submitted their arguments in briefs, which were filed herein on July 29, 1966. The basic facts as stipulated are as follows:

For over thirty years, until March 17, 1966, elections of the Barbour County Democratic Executive Committee were held on a combined at-large and beat basis. Five of the twenty-one members of the committee were elected at large. The county was divided into 16 beats and the voters in each beat elected a person residing in that beat to the committee. Prior to March 1966, no Negro had ever qualified to run as a member of the committee. Moreover, prior to the passage of the 1965 Voting Rights Act, a minuscule number of eligible Negroes were actually registered to vote. This has all changed since the passage of the Act, with the result that in four of the beats in Barbour County, there is a majority of Negroes over white qualified electors. However, over the entire county, there is still a majority of white voters.

By March 1, 1966, the six plaintiffs had qualified as candidates for the Executive Committee. Four of the six were candidates in beats where the majority of registered voters were Negroes.

On March 17, 1966, the Barbour County Executive Committee by resolution[1] changed the method of electing committee members so that the 16 members previously elected by beats (or districts) were elected on an at-large basis, although each candidate is required to reside within a particular beat and, after election, represent the beat in which he resides.

The tabulation of the election returns reflects that if the election had been held under the system that had previously been in force before the resolution of March 17, 1966, three of the plaintiffs would very likely have been elected. Under the county-wide vote system established by this resolution, all plaintiffs were defeated by substantial majorities.

Having reviewed the facts as stipulated and outlined above, and the arguments of the parties in their briefs, this Court concludes that the March 17, 1966, resolution, adopted by the Democratic Executive Committee of Barbour

1. "Whereas, in past years it has been the custom and requirement of the Democratic Executive Committee of Barbour County, Alabama, that five of its 21 members should run from the county at large and be elected by the voters throughout the county, and one member should run from and be elected by the respective voters of each of the 16 precincts in said county, only; and

"Whereas, recent decisions of the United States Courts and our State courts have established the rule and principle, commonly referred to as the one-man, one-vote, principle, whereby districts based upon geographical lines, without regard to population are held to be unconstitutional, and whereby candidates for State Legislatures and other state and county offices are required to be voted upon by approximately the same number of voters; and

"Whereas, the Democratic Executive Committee of Barbour County, Alabama, desires that its actions shall at all times

and in all things be constitutional and lawful; therefore

"BE IT RESOLVED by the Democratic Executive Committee of Barbour County, Alabama, that in all Democratic Primary Elections for members of this committee, to be held in said county beginning with the May, 1966 Primary, the twenty-one members of this Committee shall be elected in the following manner: Five members shall be committeemen from the County at Large, and may have their places of residence at any place within said county, and the sixteen other members shall be precinct or beat committeemen, one of whom shall have his place of residence in each of the sixteen precincts in said county; all members of the committee whether from the county at large or from the respective precincts, shall have their names printed on the ballots and be voted upon by the voters in Democratic Primary Elections throughout Barbour County, and to be elected by a majority of the votes cast in each instance."

County, Alabama, was born of an effort to frustrate and discriminate against Negroes in the exercise of their right to vote, in violation of the Fifteenth Amendment and 42 U.S.C. § 1981. However, this Court further concludes, for the reasons set out below, that the plaintiffs' request for reinstatement of the prior rule providing for election from beats and the request that a new election be ordered should each be denied.

## I

Any statute or resolution must be viewed in the context or setting which gave rise to its enactment. Certainly a major element in the circumstances surrounding promulgation of the resolution presently under consideration, which this Court must take into account, is "the long history of racial discrimination in Alabama." Sims v. Baggett, 247 F.Supp. 96 (M.D.Ala.1965). See also the discussion and citations in United States v. State of Alabama, 252 F.Supp. 95 (M.D. Ala.1965). Any determination of legislative motive or purpose, therefore, must be viewed in this light.

Focusing more specifically on the present case, we have a situation where Negroes have long been denied the right to vote and historically have not been represented by members of their race on the Barbour County Democratic Executive Committee. As stated earlier, prior to the passage of the Voting Rights Act of 1965, only a small percentage of Negroes in Barbour County were registered to vote. With the passage of the Act, Negroes have registered in large numbers, and by May 3, 1966, had the voting strength to elect at least four candidates to the Executive Committee. Accompanying this increase in voter strength, there were, for the first time, Negro candidates who had qualified to run for the Executive Committee. For over thirty years the method of electing officials to this committee had remained the same until just a few weeks after all six Negro candidates had qualified, Then suddenly, the Executive Committee, with little or no debate, without taking any minutes or making any record of its meetings or discussions, and, so far as the record reflects, with little or no discussion among the members of the community, promulgated a resolution, the clear effect of which is to turn Negro majorities into minorities in certain political areas, thus, as a practical matter, eliminating the possibility of a Negro candidate winning a place on the Executive Committee. Certainly when viewed against the general background outlined above, and where the manifest consequences and clear effect of the resolution greatly diminish the effectiveness of the Negroes' right to vote, an inference of a discriminatory purpose is compelling. This is the clear teaching of Gomillion v. Lightfoot, 364 U.S. 339, 81 S.Ct. 125, 5 L.Ed.2d 110 (1960); Cassell v. State of Texas, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 839 (1950); United States v. State of Alabama, 304 F.2d 583 (5th Cir. 1962); Sims v. Baggett, 247 F.Supp. 96 (M.D.Ala.1965); and Sellers v. Trussell, 253 F.Supp. 915 (M.D.Ala.1966) (concurring opinion). A passage from Sims v. Baggett amply makes this point clear:

> With the pattern and practice of discrimination in Alabama as a backdrop, the cavalier treatment accorded predominantly Negro counties in the House plan takes on added meaning. The court is permitted to find the intent of the Legislature from the consistency of inherent probabilities inferred from the record as a whole. We, therefore, hold that the Legislature intentionally aggregated predominantly Negro counties with predominantly white counties for the sole purpose of preventing the election of Negroes to House membership. The plan adopted by the Legislature can have no other effect. 247 F.Supp. at 109.

The defendants argue at length that the reason for the change in the method of electing members to the Executive Committee was to comply with the "one-man, one-vote" principle of the re-

apportionment decisions.[2] This Court concludes, however, that this justification is nothing more than a sham. First, no adequate reason has been advanced as to why it took the Executive Committee over two years to apply the reapportionment principles to the local level of government. More particularly, there were neither minutes of any meetings held to discuss the measure, nor any record of any debate of the measure, which would indicate that the measure was never seriously considered *prior to the qualification of the Negro candidates and increase in Negro voter strength.* This "coincidence," together with such cavalier treatment of a measure which effectuates so basic a reform in the election procedure, is hardly probative of any motive other than racial discrimination. Second, no adequate explanation was given as to why this particular method or system was adopted. Candidates do not run at large in the usual sense, but rather continue to represent beats or districts whose population disparities remain unchanged. Reasoning by analogy from the methods of reapportionment at the state level, the logical method to implement the one-man, one-vote concept would have been to adjust the population disparities between the beats themselves, or to hold at-large elections wherein the representatives are representative of the county as a whole and not, as in the present case, of beats of unequal population. Thus, as indicated previously, the only real change wrought by this resolution was to perpetuate the old system of population disparity with the anomalous twist that predominantly Negro beats now have their representatives determined for them by the predominantly white majority of voters in the county as a whole. The analogy between this type of discrimination and that found to exist in Sims v. Baggett, supra, wherein this Court struck down the State's plan to include predominantly Negro counties with several predominantly white counties, thus insuring a white majority in every district, scarcely needs analysis. Therefore, in the absence of any reasonable explanation for the introduction and passage of the March 17, 1966, resolution, this Court remains firm in the conclusion that its passage was racially motivated and, as a result, is unconstitutional. See United States v. State of Alabama, supra; Gomillion v. Lightfoot, supra; Sims v. Baggett, supra; Sellers v. Trussell, supra.

## II

As stated previously, plaintiffs request that the May 3, 1966, election be set aside and that either a new election be held free from the constitutional infirmities set out above, or that four of the plaintiffs be certified as duly elected members of the Executive Committee.

■ ■ The setting aside of an election is an extraordinary remedy which the Court should grant only under the most extraordinary of circumstances. See Hamer et al. v. Campbell et al., 358 F.2d 215 (5th Cir. 1966); McGill et al. v. Ryals et al., 253 F.Supp. 374 (M.D. Ala.1966). In the present case the resolution of the Executive Committee was passed a full six to seven weeks in advance of the filing of this suit. More importantly, the suit was filed at approximately 5 p.m. on May 2, 1966, and, therefore, was not brought to the Court's attention until the following morning, May 3, 1966, after the election machinery had been set in motion. No explanation or justification was given at the

---

2. The only question presented to this Court is whether application of the principles of the reapportionment decisions to this Executive Committee provides a reasonable justification for the passage of the March 17, 1966, resolution in light of its clearly discriminatory effect. Thus, the question of whether in fact the one-man, one-vote principle is constitutionally required at the local level of government is not before this Court. In a recent three-judge case from this district, the Court held, for a variety of reasons, that the reapportionment principles did not extend to the Boards of Revenue of Randolph and Houston Counties, Alabama. Moody et al. v. Flowers et al., 256 F. Supp. 195 (M.D.Ala. June 14, 1966) (Johnson, J., dissenting).

time the suit was filed, nor has any been advanced thus far, to explain why the suit was not filed sooner. Clearly, had the suit been filed at an earlier date, adequate relief could have been granted prior to May 3, 1966, thus obviating the necessity of upsetting the election. Although the plaintiffs, and the class they represent, may have suffered a wrong, they have aggravated it by their own undue delay. This case, therefore, is unlike the recent case of Hamer et al. v. Campbell et al., supra, wherein the Court ordered a new election when it appeared that prior to the election the plaintiffs had *diligently* sought relief. Accordingly, this Court concludes that the extraordinary relief requested by plaintiffs is not warranted under the circumstances as presented. Defendants will be enjoined from holding future elections under the system established by the March 17, 1966, resolution. Defendants may, of course, adopt any method they deem appropriate for electing members to the Executive Committee, including the system in existence prior to the passage of the March 17, 1966, resolution, provided, of course, that the procedures they enact do not contravene the Constitution and the laws of the United States.

In accordance with the foregoing, it is the order, judgment and decree of this Court that plaintiffs' request that this Court reinstate the rule previously existing in Barbour County, Alabama, providing for electing members to the county committee on a beat-by-beat basis, set the election of May 3, 1966, aside and require a new election, be and each request is hereby denied.

It is the further order, judgment and decree of this Court that plaintiffs' motion that four of the plaintiffs be declared members of the Democratic Executive Committee of Barbour County, Alabama, be and the same is hereby denied.

It is the further order, judgment and decree of the Court that the resolution passed on March 17, 1966, by the Barbour County Democratic Executive Committee changing the method by which its members are elected, be and the same is hereby declared unconstitutional.

It is further ordered that the defendants, T. W. Paris, Charles L. Weston, Robert F. Beaty, Jr., Robert H. Bennett, Floyd Peak, Fred Tew, Alfred A. Grant, Audrey K. Hollingsworth, J. D. Hinson, Rufus Lee, J. D. Gilchrist, W. D. Anderson, Will Green, Hugh Boyd, William J. Adams, Walter Pitt Eubanks, Dan Ross, Bennett Teal, William Bush, Perry Abercrombie, D. Pat Wilson, as members of the Barbour County Democratic Executive Committee, and Judge George E. Little, their agents and successors in office, be and the same are hereby enjoined from holding any future election for membership to the Democratic Executive Committee pursuant to the provisions of the resolution adopted by said committee on March 17, 1966.

It is further ordered that the costs incurred in this proceeding be and the same are hereby taxed against the defendants.