Reverend Jesse Carroll KNIGHT, Sr., et al.,

v.

W. Fox McKEITHEN, Secretary of State, et al.

Civ. A. No. 94–848–A.

United States District Court, M.D. Louisiana.

Nov. 7, 1995.

John W. Borkowski, Hogan & Hartson, L.L.P., New Orleans, Louisiana, and Samuel L. Walters, Lawyers' Committee for Civil Rights Under Law, Washington, D.C., for Plaintiffs.

Sheri M. Morris, State of Louisiana Secretary of State, Baton Rouge, LA, for W. Fox McKeithen.

Angie R. LaPlace, Attorney General's Office, Civil Division, Baton Rouge, LA, for Richard Ieyoub.

James David Caldwell, Office of the District Attorney, Tallulah, LA and Michael E. Lancaster, Lancaster, Baxter & Lancaster, Tallulah, LA, for East Carroll Parish School Board.

James J. Thornton, Jr., Johnston & Thornton, Shreveport, LA, for Bossier Parish School Board.

Before STEWART, Circuit Judge, PARKER and POLOZOLA, District Judges.

JOHN V. PARKER, Chief Judge:

This matter is before the court on a motion to dismiss filed on behalf of the Governor of the State of Louisiana, Edwin W. Edwards, the State Attorney General, Richard P. Ieyoub, and the Secretary of State, W. Fox McKeithen (the "state defendants"). Plaintiffs have filed an opposition. The motion was taken under submission following oral argument.

## Background

Plaintiffs are African–American citizens and registered voters of East Carroll Parish, Iberville Parish, Bossier Parish, DeSoto Parish, St. Mary Parish, and West Carroll Parish, Louisiana. They filed this action against their respective parish school boards and the state defendants seeking declaratory and injunctive relief for alleged voting rights violations.

Following the 1990 census, the school boards determined that their existing election districts were malapportioned[1]. Plaintiffs filed this action in July of 1994, claiming that the school boards failed to timely adopt and obtain "preclearance" of valid reapportionment plans[2], in violation of the Fourteenth and Fifteenth Amendments to the United States Constitution and of Sections 2 and 5 of the Voting Rights Act of 1965, 42 U.S.C. §§ 1973, 1973c.

However, since the filing of the complaint, all of the school boards, except the Bossier Parish School Board, have adopted reapportionment plans and have obtained "no objection" letters from the Department of Justice. The Bossier Parish School Board has filed a declaratory judgment action in the United States District Court for the District of Columbia. At the request of plaintiffs, a three judge court has been convened to consider the Section 5 claims, 42 U.S.C. § 1973c.

We here consider the motion to dismiss only as to claims made under Section 5 of the Voting Rights Act.

Section 5 applies to the State of Louisiana whenever it seeks to:

administer any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964 ... 42 U.S.C. § 1973c.

The State may not implement any change in election practice or procedure until it is precleared administratively by the Attorney General of the United States or judicially by the United States District Court for the District of Columbia. 42 U.S.C. § 1973c.

## Allegations Made Against the State Defendants

In their complaint, plaintiffs allege that the Attorney General and the Secretary of State have "instituted a policy of postponing indefinitely preparations for police jury elections in Pointe Coupee, West Feliciana, East Carroll and Madison parishes" thereby allowing "incumbent police jurors to hold over in office and facilitating the police juries' failure or refusal to adopt lawful, nondiscriminatory redistricting plans." Paragraph 25.

This policy was allegedly "instituted" in August of 1991, when the former Attorney General issued Attorney General Opinion No. 91–442–A, directed to the Secretary of State. Paragraph 22. Attorney General Ieyoub allegedly "reaffirmed" that policy by issuing opinion No. 92–105 in March of 1992. Paragraph 23. Plaintiffs claim that the Secretary of State adopted the state policy set by the Attorney General by "declining to accept qualifying papers" for certain police jury elections "in which police jury redistricting was incomplete by the beginning of candidate

1. Paragraph 21 of the complaint alleges that all six school boards "have already determined that their existing election districts are malapportioned and they are therefore required to reapportion ..."

2. According to the allegations of the complaint, each of the six school boards submitted redistricting plans to the Attorney General of the

United States for "preclearance" and five of them were "still pending in the Justice Department" on the date the suit was filed. See paragraphs 40, 43, 45, 47, 49 and 52. Thus, it is clear that plaintiffs do not allege non-compliance with Section 5 by the school boards. Their complaint is that the plans submitted did not satisfy the Department of Justice.

qualification for the Fall 1991 elections."[3] Paragraph 24.

Plaintiffs claim that the policy of the Attorney General and the Secretary of State "concerning the cancellation of regularly scheduled elections and extensions of the terms of incumbent office holders set forth in Attorney General Opinion 91–442(A)" constitutes a change in the state election law practices triggering the "preclearance" requirements of Section 5 of the Voting Rights Act. Paragraph 27.

Plaintiffs further claim that under state law the school boards were "required to complete reapportionment by December 31, 1992 and to submit their redistricting plans for Section 5 preclearance within 120 days after adoption." Paragraph 30. It is alleged that the failure of the parish officials to complete reapportionment "in accordance with the schedule prescribed by state law is considered misfeasance in office and may subject parish officials to the sanction of reduced or withheld state revenue sharing funds." Paragraph 31.

Plaintiffs claim that the state defendants have "facilitated and abetted" the parish school boards in violating state and federal laws governing redistricting by: failing to institute "proceedings to withhold or reduce state revenue sharing funds" of the school boards; by failing "to ensure" that the school boards comply "with the Louisiana statutory deadlines for conducting reapportionment and to enforce other Louisiana laws governing reapportionment"; and by failing take action "to prevent delays" in school board redistricting or to "ensure that parish school board elections will be conducted throughout the state in the Fall of 1994, as mandated by state law." Paragraphs 32, 34 and 38.

### Section 5 Arguments

In their brief, plaintiffs argue that the State is administering a "change" in voting practice or procedure that must be "precleared" under Section 5 of the Voting Rights Act. The "change" in voting procedure is described as follows:

"the practice of canceling elections when there is no viable redistricting plan available and allowing incumbents to holdover, approved by Attorney General Opinion Number 91–442–A and 92–105, while at the same time not enforcing laws that require timely reapportionment." Opposition brief, p. 18.

At oral argument, counsel for plaintiffs stated that his clients are not seeking "preclearance" of the state's carry-over-in-office statute (La.R.S. 42:2) or any Attorney General Opinion per se. Rather, plaintiffs contend that the state defendants have failed to submit the change in voting practice announced in opinion No. 91–442–A from that formerly expressed in opinion No. 91–442. Opinion No. 442–A purportedly condones the cancellation of elections and implements a new "hold-over" policy for incumbents while opinion No. 442 purportedly required elections to go forward under malapportioned districts.

The state defendants contend that opinion No. 91–442–A does not reflect a change in policy. They argue that the Attorney General merely provides legal advice and that the state legislature, rather than the Attorney General, establishes state policy. Moreover, they contend that the advice is indisputably correct as shown by plaintiffs' request for a declaration that any implementation of the unprecleared plans would violate Section 5.

### Discussion

■ On a motion to dismiss for failure to state a claim, the court must accept all well-pleaded facts as true and review them in the light most favorable to plaintiff. *Piotrowski v. City of Houston,* 51 F.3d 512 (5th Cir. 1995). The motion must be denied unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Id.*

Essentially, plaintiffs contend that the state defendants have implemented a change in election practice by allowing school boards to postpone elections and for incumbents to carry over in office indefinitely rather than enforcing the statutory sanctions for withholding revenue sharing funds. The only

---

**3.** According to paragraph 35 of the complaint, police jury elections were held in 1993 in Pointe Coupee, West Feliciana, East Carroll and Madison parishes.

specific factual allegations supporting this claim are those relating to the issuance of Attorney General Opinion No. 91–442–A and the lack of proceedings to enforce the statutory sanction of withholding revenue sharing funds.

■ The court disagrees with the plaintiffs' contention that there has been a "change" in the election practices. The only difference between opinion No. 91–442 and opinion No. 91–442–A is that the Secretary of State need not accept qualifying papers when notified by the local authorities that there is no valid plan in place rather than waiting for an inevitable court order staying the election. On August 12, 1991, the Attorney General advised that unless a court stayed the elections under the old plan, the parish had to proceed with elections under the old plan because it was illegal to conduct elections under the proposed plan prior to "preclearance." The opinion provides in pertinent part as follows:

[I]t is the opinion of this office that it would be unlawful for the secretary of state to enforce any parish governing authority's reapportionment plan for the 1991 Gubernatorial Election unless such plan has been precleared prior to qualifying on September 3rd, 1991.... **[I]f reapportionment plans ... are not approved prior to qualifying, then candidates shall qualify to run from the old district or those prior to reapportionment, unless a court shall issue an order to the contrary.**

(Emphasis added.)

Ten days later, the Attorney General issued opinion No. 91–442–A, which was designed to clarify the prior opinion. In the second opinion, the Attorney General expressly says that the parish may cancel elections under the malapportioned plan when the parish governing authority certifies that the redistricting plan has not been "precleared."

**In the event parish governing bodies officially notify you certifying that there is no valid and effective reapportionment plan upon which an election may be held, it is our opinion that you may decline to accept qualifying papers** from persons seeking to qualify as candidates for election to positions on that governing body, and that, accordingly, you may decline to prepare the ballot. Conducting such an election would likely be a futile exercise because any candidate or citizen could successfully challenge the election. Therefore, we have concluded that you may accept the certification of a parish governing authority that no valid apportionment plan exists and thus, there are no purely ministerial duties that you are required to perform.... Additionally, clerks of court would have no duty to accept candidate's qualifying papers.

. . . .

Accordingly, **incumbents presently in office will hold over until a successor is sworn into office.**

(Emphasis added.) The opinion indicates that under those particular circumstances, the parish does not have to wait until a suit is filed for the purpose of enjoining the election before it can take action to prevent elections under the malapportioned district plan. When read together, the opinions reflect the Attorney General's certainty that where the districts are admittedly malapportioned, a suit would be filed to prevent the election under the old plan, and the court would "stay" the election. The second opinion short-circuits the inevitable and successful injunction action which would ultimately prevent the parish from having the election under the old plan. The bottom line remains the same: the election under the old, malapportioned plan will not occur. The short cut in the process, which reaches the same result, does not qualify as a "change" in the election practice espoused in opinion No. 91–442.

If the elections cannot and will not occur, by default, the incumbents must remain in office until the next election. Revised Statute 42:2, a statute predating the Voting Rights Act, provides that "[e]very public officer in this state except in case of impeachment or suspension, shall continue to discharge the duties of his office until his suc-

cessor is inducted into office."[4] Thus, the Attorney General's statement that "incumbents presently in office will hold over until a successor is sworn into office" is merely a routine application of La.R.S. 42:2. It does not change the law. Consequently, the statement does not create a "change" in the voting practice discussed in opinion No. 91–442.

Nonetheless, we will address the plaintiffs' concerns that opinion No. 91–442–A establishes a state policy of condoning untimely reapportionment by school boards and being overly tolerant of incumbents carrying over in office. It is readily apparent from the face of the opinion that it does no such thing. The opinion instructs the parish governing authorities to "proceed forthwith to remedy the situation by adopting a valid reapportionment plan." Moreover, the Attorney General expressly mentions the statutory penalty of withholding revenue sharing funds for untimely reapportionment. Opinion No. 91–442–A directs as follows:

> Finally, there exists a remaining question as to when elections will be conducted for those offices. The parish governing authorities should proceed forthwith to remedy the situation by adopting a valid reapportionment plan. R.S. 18:1923 provides that the failure of a governing body to reapportion itself prior to December 31, 1991, and to submit that plan for preclearance, constitutes malfeasance in office and subjects the parish to the loss of state revenue sharing funds. Elections would have to be scheduled at the next available election date provided by R.S. 18:402.

The opinion stresses the importance of pursuing reapportionment and specifies that the parish must have the elections by the "next available election" under the Revised Statutes. The instructions and warnings provided in the opinion cannot logically be interpreted as a policy that encourages either delinquency or indefinite incumbency. We find no merit to the plaintiffs' arguments.

Further, the need for the attorney general opinion arose because of the State's attempt to comply with Section 5. Effectively, the plaintiffs seek "preclearance" of a policy of shutting down elections where the school boards do not have "preclearance" for their plans. Section 5 obviously was not intended to impede states from insuring that Section 5 requirements are satisfied or to cause states to incur unnecessary costs.

It cannot be seriously contested that it would be a futile and costly act for the state defendants to proceed with elections where existing districts are malapportioned and new plans have not been "precleared." Indeed, in the case at hand, plaintiffs would have the court declare that the school boards may not implement plans that have not been "precleared" and in the same breath find that the state defendants have violated Section 5 by failing to preclear the very policy imposed to prevent violation of Section 5 pending the "preclearance." There can be no doubt that a successful challenge would have been made to any elections being conducted under the old districts in view of the plaintiffs' admission that the old districts were malapportioned. Why compel the state to waste taxpayers' money by engaging in a vain and useless act. Nothing in Section 5 directs such an anomalous result.

We make no comment on whether an attorney general opinion is ever capable of creating a change in voting practices or whether a holdover provision is capable of creating a change[5] under Section 5. We simply hold that this particular attorney general opinion (No. 91–442–A) in light of Louisiana law does not effect a "change" in the voting practices in any parishes in Louisiana sufficient to evoke the "preclearance" requirements under Section 5.

---

**4.** The court observes that the statute was amended in 1975. At oral argument, counsel for the state defendants informed the court that the 1975 amendment was purely technical. Plaintiffs apparently agree, having submitted no authority to the contrary. There can be no doubt that the advice of the Attorney General would have been the same without the amendment under the original statute.

**5.** *See Sellers v. Trussell,* 253 F.Supp. 915 (M.D.Ala.1966) (holding that a statute which extended the term of the incumbent commissioner who was elected prior to the time when African Americans could vote violated the Fifteenth Amendment).

■ Plaintiffs further contend that the election practice of condoning untimely reapportionment has been exacerbated by the failure of the state defendants to enforce La.R.S. 18:1922, 1923. Section 1922 requires local governing authorities to adopt reapportionment plans by the end of the year following the year that decennial census figures are reported to the president of the United States. No later than 120 days after being adopted, a reapportionment plan must be submitted to the Department of Justice. Section 1923(A) provides that: "Failure to meet any of the requirements of R.S. 18:1922 shall be misfeasance in office."

Under § 1923(B), failure to comply with § 1922 *"may"* subject the local governing authority to the sanction of having the amount of any state revenue sharing funds payable to that governing authority, withheld, reduced, or both." (emphasis supplied) Plaintiffs contend that § 1923 authorizes the Attorney General to bring civil or criminal proceedings to enforce the "sanction." Defendants take the opposite position.

The court finds that the argument relating to enforcement of § 1923 lacks merit in any event. Plaintiffs have failed to make any allegations [6] demonstrating that the Attorney General (or any other defendant) has ever enforced § 1923. Moreover, the absence of an established enforcement proceeding prevents the plaintiffs from establishing any viable remedy for their § 1923 claim. Hence, the plaintiffs have not stated a claim under § 1923 upon which this court may grant relief.

In conclusion, the court finds no "change" in election practice requiring submission under Section 5. Opinion No. 91–442–A does not reflect a policy of condoning untimely reapportionment. It merely sets forth a practical determination to shut down elections that inevitably would be enjoined by a court if allowed to proceed. Plaintiffs have further failed to allege any facts to support the claim that there has been a "change" in election practice concerning revenue sharing funds or otherwise.

For the foregoing reasons, the three judge court concludes that the Section 5 claims should be dismissed for failure to state a claim upon which relief may be granted. Accordingly, the motion by the state defendants to dismiss the Section 5 claims is hereby **GRANTED.**

---

**6.** Plaintiffs have not moved to amend the complaint and it does not appear that this is a deficiency that could be cured by an amendment.