**Ernest PERKINS et al., Plaintiffs,**

v.

**L. S. MATTHEWS et al., Defendants.**

**Civ. A. No. 4464.**

United States District Court
S. D. Mississippi,
Jackson Division.

July 17, 1969.

James A. Lewis, Jackson, Miss., for plaintiffs.

R. L. Goza, Canton, Miss., for defendants.

Before COLEMAN, Circuit Judge, COX, Chief District Judge, and NIXON, District Judge.

COLEMAN, Circuit Judge.

### 1. The Controversy.

Twelve days prior to the date prescribed by law for the holding of Democratic municipal primaries throughout Mississippi, the plaintiffs filed their suit in the District Court. They complained that in 1966 and 1968 the City of Canton, Mississippi, had extended its municipal boundaries, that this caused a large number of white voters to be included in the City, and that this diluted the effectiveness of the vote of newly enfranchised black citizens. It was said that this, in the absence of a submission to the United States Attorney General or a declaratory judgment from the United States District Court for the District of Columbia, was a failure to comply with 42 U.S.C. § 1973c, the Voting Rights Act of 1965.[1]

The complaint also lodged a similar attack against the re-location of polling places within the four wards of the City of Canton.

May 8, 1969, pursuant to a hearing, Judge Nixon granted a temporary restraining order enjoining the holding of the municipal primaries scheduled for May 13 pending the disposition of the case on the merits. No election has been held and the encumbents are holding over in their respective offices, as provided by Mississippi law.

May 15, 1969, the Chief Judge of this Circuit constituted a Three-Judge Court composed of Judges Coleman, Cox, and Nixon.

By leave of the Court, May 30, 1969, the plaintiffs added a third count. This alleged that prior to 1969 four members of the Board of Aldermen in the City of Canton were elected by wards. The complaint acknowledged that in 1962, prior to the enactment of the Voting Rights Act of 1965, the Mississippi Legislature enacted a general statute, amending existing law, to provide that Aldermen in all municipalities of less than ten thousand population shall be elected by a vote of the entire electorate of the municipality, each required to reside in the ward which he proposed to represent on the town council.[2] It was alleged as a fact, which is the fact, that Canton did not comply with this law in the municipal elections of 1965, but followed the old statute, that is, the four aldermen were elected by wards.

In 1969, Canton proposed to comply with the 1962 statute. Plaintiffs say that this would be a change from the procedure in effect on November 1, 1964, and was thus invalid until either submitted to the Attorney General or to the United States District Court for the District of Columbia, as in other cases.

### 2. The Decision.

We have heard this case on stipulations of the parties, exhibits, and oral testimony adduced in open court. We find and hold that under the facts of this case the contentions of the plaintiffs are not well taken, that the temporary injunction should be dissolved, and the qualified electors of the City of Canton should be free to hold an election in compliance with the 1962 statute.

### 3. The Facts.

Canton had a population of 9,707 at the last federal census. Approximately 5,900 are registered to vote in municipal elections.

Based on an average index of two voters per residence, which the plaintiffs do not challenge, the 1965 expansion of the Canton city limits brought into the City 46 black voters and no white voters. Plaintiffs do not attack this expansion. The 1966 expansion brought in 28 black voters and 64 white voters. The 1968 expansion brought in 8 black voters and 112 white voters. The sum total of the voters brought within the city limits by

---

1. Enacted August 6, 1965, applicable to changes with respect to any voting qualifications, standard practice, or procedure different to that in force on November 1, 1964.

2. Chapter 537, Laws of Mississippi of 1962, Mississippi Code of 1942, § 3374–36.

the three extensions would be 82 black voters and 176 white voters, or a majority of 94 white voters among those annexed in all three expansions.

One of the plaintiffs, who was a candidate for Mayor in the Democratic primary scheduled for May 13 [which office would have been voted upon city at large in any event] testified that as of January 12, 1969, there were 2052 white voters in Canton and 2794 black voters, a majority of 742 black. He further testified that between January 12 and February 3 approximately 800 white voters registered in the city and only 150 black voters registered. It is to be noted that the figure of 800 new white registrants as contrasted to only 150 black registrants was not supported by documentary evidence but represented the witness's best judgment after an observation of the registration books. If there were 800 new white registrants after January 12 only 176 could have come from the annexed areas, even if all had waited until then to register. In any event all the witnesses agreed that regardless of the 94 net gain in the white vote, brought about by the expansions, the majority of the electorate in the City of Canton is black.

### 4. Conclusions of Law on the Applicability of the Act to the Expansions.

We are therefore confronted with the question: Did Congress intend (in the affected states) to freeze municipalities to their existing boundaries, prohibiting any municipal expansion even though, as in this case, the annexations included a white majority of 94 in a total voting population of 6,000, not destroying a black majority?

We have been cited nothing to show that Congress either thought of such or intended it. Applying the full reach of the Act, Congress could not have intended such a result unless it were shown to be a stratagem deliberately designed to overturn a black majority at the municipal polls. In Canton, Mississippi, the black voters still had a majority of not less than 600 after the expansions were effected. It is significant that the first expansion brought in 46 black voters and no white voters at all. Moreover, the City has expended over three quarters of a million dollars bringing municipal services to the annexed area, including the all-black annexation of 1965.

██ We therefore hold that these annexations were not violative of the Voting Rights Act of 1965.[3]

### 5. Compliance with the Municipal Election Law of 1962.

On March 26, 1962, the Supreme Court decided Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663. On May 24, 1962, the Mississippi Legislature, by and with the approval of the Governor, enacted Chapter 537 of the Laws of Mississippi of 1962, entitled "AN ACT providing for the city-wide election of all individuals comprising the governing authority of any municipality". The Act amended the previously existing § 3374–36, Mississippi Code of 1942, and concluded with the following language, not heretofore in the statute:

"All aldermen shall be selected by vote of the entire electorate of the municipality. Those municipalities which determine to select one alderman from each ward shall select one of the candidates for alderman from each particular ward by a majority vote of the entire electorate of the municipality".

Plaintiffs do not attack the validity of this amendment. They say it should not be observed in Canton in 1969 because it was not observed in 1965.

██ This enactment preceded the Voting Rights Act of 1965 by a little

---

3. Under Mississippi Law, municipalities may neither expand nor contract their corporate limits at their unfettered discretion. To do either they must petition the Chancery Court, where any party in interest may object and litigate his objections. Mississippi Code 1942, § 3374–10 et seq.

over three years. It permitted the requirement that an alderman should reside in the ward he proposes to represent, but the choice is left to all the voters in the municipality, each having an equal voice in the selection of the governing authorities of the city. This complies with the Constitutional requirement of one man—one vote, Dusch v. Davis, 387 U.S. 112, 87 S.Ct. 1554, 18 L.Ed.2d 656 (1967).

We have previously pointed out that in the municipal elections of 1965 Canton did not comply with the 1962 law. The reasons for non-compliance are not shown. In any event, plaintiffs wish to continue the invalid 1965 procedure of allowing each ward to elect its alderman for the reason that in one ward Negro citizens are in the overwhelming majority, leaving them in the position, if they wished, of voting on racial considerations alone and thus having at least one Negro on the City Board.

If race alone is to govern the outcome of elections as well as the official acts of city legislative bodies, it is obvious that if the procedure desired by the plaintiffs were approved then the one Negro member of the board would always be outvoted by the four white members. His presence on the City Board would, in practical effect, amount to nothing beyond the presence of a black man who could always cast his dissenting vote. Since a majority of the voters in Canton are black it is equally true that under the 1962 Act the black voters have the power, if they wish to be influenced by race alone to elect an all black governing body.

We do not think, however, that this issue is to be decided by these considerations.

■■ In the first place, the City of Canton should obey the one man—one vote rule. In the second, the 1962 Act antedates the Voting Rights Act of 1965, and could not have been enacted for the purpose of thwarting the latter. In the third, it is axiomatic that a violation of the law in the elections of 1965 does not justify continued violations. The City should comply with the law in 1969, regardless of whether it complied in 1965. Indeed, non-compliance in 1969 would invalidate the election if a challenge were to be raised. We are not impressed with the argument that Congress intended to freeze unlawful election procedures. Unlawful election procedure, insofar as the Fifteenth Amendment applies, is what the Act intends to stop. Moreover, the state statute requiring that aldermen be elected by all the voters of the municipality, instead of from individual wards, brings cities in compliance with the one man—one vote rule, leaving to all the inhabitants an equal voice in the election of their municipal officials, something which Congress could not abrogate without a Constitutional Amendment.

We are therefore of the opinion that the contentions of the plaintiffs on this issue are not due to be sustained.

### 6. The Change in Polling Places.

■ We find no merit in the attack upon the changes made in the location of the polling places. The evidence on this issue is undisputed. The same number of polling places will remain in each city ward. No voter will have to go outside his ward to vote. The changes were made necessary because one place did not have space for voting machines, two others had to be moved because they had been situated on private property (bank lobbies) and permission to use the space had been withdrawn, and another was moved out of the courthouse to a school building because facilities were more ample and the move eliminated any interference with sessions of the various courts sitting at the courthouse.

This opinion constitutes our findings of fact and conclusions of law in this case, Rule 52(a), Federal Rules of Civil Procedure.

Judgment may be entered by any Judge of the Court, for the Court, dissolving the temporary injunction and dismissing the complaint.