**Ernest PERKINS et al., Plaintiffs,**

**v.**

**L. S. MATTHEWS et al., Defendants.**

**Civ. A. No. 4464.**

United States District Court,
S. D. Mississippi,
Jackson Division.

Oct. 20, 1971.

Nausead Stewart, Jackson, Miss., for plaintiffs.

R. L. Goza, Canton, Miss., for defendants.

Before COLEMAN, Circuit Judge, and COX and NIXON, District Judges.

## OPINION OF THE COURT

NIXON, District Judge.

The Supreme Court has held that this Court improperly exceeded the limited inquiry reserved to a Three-Judge Court under the Voting Rights Act of 1965 when it examined, on the merits, certain changes in election practices in the City of Canton, Mississippi "to determine whether they had 'a discriminatory purpose or effect'." Perkins v. Matthews, Mayor of City of Canton, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476.

This Three-Judge Court had determined, June 2, 1969, after a full hearing, that extensions of Canton municipal boundaries in 1965, 1966, and 1968 [1] could not possibly be violative of the Voting Rights Act of 1965 because the annexations did not substantially alter the absolute city-wide Black voting majority of not less than 600 voters. [2]

Secondly, this Court held that the change from ward to at-large elections of aldermen which was required by a state statute enacted in 1962, but not followed in 1965, did not require submission under § 5 because the 1962 law antedated the Voting Rights Act of 1965, non-conformity in the election of 1965 could not justify a continued violation in 1969, and the purpose of the 1962 state law was to meet the paramount Constitutional requirement of one-man—one-vote. [3]

Finally, this Court determined that there was no merit in the challenge to the relocation of polling places, because the changes had been "made necessary because one place did not have space for voting machines, two others had to be moved because they had been situated on

private property (bank lobbies) and permission to use the space had been withdrawn, and another was moved out of the courthouse to a school building because facilities were more ample and the move eliminated any interference with sessions of the various courts sitting at the courthouse". [4]

In holding that an examination of the above considerations were beyond the permissible scope of this Court's inquiry, the Supreme Court noted that any change in a state's election practices and procedures which were in force or effect on November 1, 1964, regardless of how minor, and even including a change from an unlawful procedure as in the case sub judice, falls within the purview of § 5. Accordingly, it was held that the annexation of territory and the relocation of polling places required submission to the Attorney General or to the District Court for the District of Columbia. Thus, it is now clear that a local Three-Judge Court has no discretion or power to examine the merits of or take into consideration any special circumstances with respect to any change in an election practice or procedure which may be inaugurated by state or local governments except as in such cases as Connor v. Johnson, 402 U.S. 690, 691, 91 S.Ct. 1760, 29 L.Ed.2d 268.

The Supreme Court declined, however, to adopt the remedy urged by the plaintiffs in this case, namely, to set aside the October, 1969, elections and order new elections in which the challenged changes would not be enforced. Instead, the determination of the appropriate remedy was reserved for this Court upon remand, in the following language:

"At the same time, we recognize that, in determining the appropriate remedy, other factors may be relevant, such as the nature of the changes complained of, and whether it was reasonably clear at the time of the election

1. The territory acquired by the extensions contained a majority of 95 white voters.

2. Perkins v. Matthews, 301 F.Supp. 565, 567 (1969).

3. Id., at 567, 568.

4. Id., at 568.

that the changes were covered by § 5. In certain circumstances, for example, it might be appropriate to enter an order affording local officials an opportunity to seek federal approval and ordering a new election only if local officials fail to do so or if the required federal approval is not forthcoming. Since the District Court is more familiar with the nuances of the local situation than are we, and has heard the evidence in this case, we think the question of the appropriate remedy is for that court to determine, in the first instance, after hearing the views of both parties.[14]

> "14. We add only one restriction: If the District Court decides that a new election is required, Canton should be permitted to enforce any changes of the new election for which it can obtain federal approval.[5]

"The judgment of the District Court is reversed, and the case is remanded to that court with instructions to issue injunctions restraining the further enforcement of the changes until such time as the appellees adequately demonstrate compliance with § 5, and for further proceedings, consistent with this opinion."

In order to expedite this matter, a hearing was held before a single Judge Member of this Court on April 12, 1971, at which time each side was given the opportunity to present its position, and the transcript thereof was forwarded to the other two Judges hereof. Thereafter, the parties presented briefs and other documentary evidence to the Court for its consideration. It is now incumbent upon this Court to fashion an appropriate remedy within the perimeter of the directions of the Supreme Court.

■ We note, of course, that to require a new election prior to the next regularly scheduled election in 1973 would be an unusual, if not harsh, remedy. The setting aside of a completed election is normally required only upon a finding by the Court that gross and indefensible racially discriminatory practices were employed in the election. Bell v. Southwell, 5 Cir., 1967, 376 F.2d 659; see also Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215. Both parties agree, however, that a determination as to the discriminatory purpose or effect of the changes under consideration herein is not one of the criteria which should be considered in determining the relief. Indeed, the Supreme Court recognized that this Court had found no discriminatory purpose or effect in the changes being litigated. Evidently, this is the reason the simple remedy proposed by Mr. Justice Harlan, i. e., that a new election should be required only if the city was unable to obtain federal approval of the implemented changes, was not adopted by a majority of the Supreme Court.[6]

It is not to be forgotten, however, that the 1969 election was not a wilful exercise of arbitrary power by the duly constituted authorities of the City of Canton. The elections had been stayed by judicial order. They proceeded only after this Court gave the green light. Obviously, the local authorities were entitled to rely on our formal judgment unless and until it was reversed, as ultimately occurred. The right of the people to choose their officials at the ballot box, in a fair and legal election, is not lightly to be deferred. If some form of blame is to be attached to anyone it has to be laid at the door of this Court, which the Supreme Court had the clear authority to reverse according to its own judgment of the law.

**A.**

The results of the October 28, 1969, general election in which those persons

5. Perkins v. Matthews, 400 U.S. 379, 396, 397, 91 S.Ct. 431, 441, 27 L.Ed.2d 476 (1971).

6. Perkins v. Matthews, 400 U.S. 379, 401, 91 S.Ct. 431, 27 L.Ed.2d 476.

residing in the annexed areas participated were as follows: [7]

| MAYOR | Hermit A. Jones | 2460 |
| | John Nichols | 1587 |
| ALDERMAN (At Large) | Jeff D. Pace | 2391 |
| | Robert Chinn | 1578 |
| ALDERMAN (Ward One) | Phillip Buffington | 2395 |
| | Charlie Harris, Jr. | 1528 |
| ALDERMAN (Ward Two) | Amos Dowdle, Jr. | 1661 |
| | Jimmy Holifield | 1094 |
| ALDERMAN (Ward Three) | Glynn L. Cook | 2364 |
| | Sam Young | 1572 |
| ALDERMAN (Ward Four) | Earl B. Goolsby, Sr. (Unopposed) | 2460 |

Of the 280 qualified electors residing in the annexed areas, only 233 actually voted. Of these, 32 were qualified electors of the City of Canton as its boundaries existed prior to the annexations and later moved their places of residence into the newly annexed areas.[8]

If the 233 voting electors in the annexed areas were subtracted from each of the successful candidates' total, the election results would have been as follows:

| MAYOR | Hermit A. Jones | 2227 |
| | John Nichols | 1587 |
| ALDERMAN (At Large) | Jeff D. Pace | 2158 |
| | Robert Chinn | 1578 |
| ALDERMAN (Ward One) | Phillip Buffington | 2162 |
| | Charlie Harris, Jr. | 1528 |
| ALDERMAN (Ward Two) | Amos Dowdle, Jr. | 1428 |
| | Jimmy Holifield | 1094 |
| ALDERMAN (Ward Three) | Glynn L. Cook | 2131 |
| | Sam Young | 1572 |
| ALDERMAN (Ward Four) | Earl B. Goolsby, Jr. (Unopposed) | 2227 |

7. Plaintiffs' Exhibit 1 introduced at the April 12, 1971, hearing on this matter; Affidavit of Mrs. Georgie L. Cobb, City Clerk and Voter Registrar for the City of Canton.

8. Affidavit of Mrs. Georgie L. Cobb, City Clerk and Voter Registrar for the City of Canton.

Even if the 233 voters were then added to each of the defeated candidates' total; the election results would have remained unchanged.

Thus, it is absolutely clear that, on an at-large basis, the result of the election was not affected in any way whatsoever by the annexations in 1965, 1966, and 1968.

■ Since the Mayor and one Alderman had always been elected at-large, there was no change as to these officers. Moreover, if every voter in the annexed territory had voted for the opposition Mayor Jones and Alderman at-large Pace would have been elected by substantial majorities. Thus, the will of the voters entitled to vote has already been accomplished and there is no warrant for ordering another election as to these two offices.

**B.**

Pursuant to a Mississippi Statute enacted in 1962,[9] but not followed in 1965, the four aldermen previously elected by wards in 1961 and 1965 were elected at large in the October 28, 1969, general election.

The elected alderman from Ward One, Phillip Buffington, defeated his opponent in *Ward One* by a vote of 637 to 19.

The elected alderman from Ward Two, Amos Dowdle, Jr., defeated his opponent in *Ward Two* by a vote of 363 to 290.

■ The elected alderman from Ward Four, Earl B. Goolsby, Sr., had no opposition in the October, 1969, election.[10] Thus, it is crystal clear that the election of these men represented the will of those entitled to vote in the Wards, if the election had been by Wards, and there is no necessity to order a new election as to these officials.

9. Section 3374-36, Mississippi Code of 1942 as amended in 1962.

10. Affidavit of Mrs. Georgie L. Cobb, City Clerk and Voter Registrar of the City of Canton.

██ The situation in Ward Three is entirely different. In that Ward Glynn L. Cook, the winner at large, received 343 votes while his opponent, Sam Young, received 747 votes. Had the election been held in the Ward only, as in 1965, Sam Young would presumably have been elected. The will of the people in Ward Three as to Mr. Cook as of the date of the election is beyond dispute. Under the mandate of the Supreme Court, the election of Mr. Cook, from the City at large, must be set aside and a new election held in Ward Three only for the selection of an alderman from that Ward.

### C.

Finally, we must examine the effect of the changes made in polling places in the October, 1969, general election. A determination of this issue presents an extremely difficult and perhaps impossible task. We had previously found that there was no merit to the plaintiffs' attack on the changes made in the locations of the four polling places. ·

Certainly the defendants should not be required to ascertain from every qualified non-voter in the City of Canton whether his failure to vote was caused by a change in a polling place within his ward. The plaintiffs admit that such a procedure would be absurd.[11]

██ Upon a reconsideration of the entire record, as supplemented, we adhere to our original finding that the change in polling places could not have had any inhibitary affect upon the exercise of the franchise and did not affect the outcome of the election.

The proof shows that the location in the Madison County Jail to which the polling place for Ward Three was changed is that formerly utilized as living quarters of the jailer and his family and *not* that containing cells in which inmates were confined.

### D.

In sum, it is the judgment of this Court that no new elections should be held in the City of Canton except for Alderman of Ward Three, which must proceed as above directed. Alderman Cook will hold office until his successor shall have been elected and qualified.

The annexations of 1965, 1966, and 1968 shall remain inoperative only insofar as it affects any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964, until such time as they may be submitted and approved as required by the Voting Rights Act.

It will be for the Attorney General of the United States or the District Court of the District of Columbia to say, if submitted, whether elections shall hereafter be held in Canton in violation of the Laws of 1962 simply because an unlawful election was held in 1965.

██ The City of Canton will be directed hereafter to hold its municipal elections in accordance with the Voting Rights Act of 1965, as amended. No writ of injunction will issue however, because the election now under review was held in accordance with the order of this Court and that does not reveal a contumaciousness justifying an injunction.

This Opinion is signed by the Managing Judge on behalf of the other Judges of this Three Judge Court.

11. Tr. pp. 18–19.