**UNITED STATES of America**

v.

**Katherine WARD, Registrar of Voters of Madison Parish, Louisiana, and the State of Louisiana.**

**Civ. A. No. 8547.**

United States District Court
W. D. Louisiana,
Monroe Division.

Oct. 22, 1963.

Robert F. Kennedy, Atty. Gen., of the United States, Burke Marshall, Asst. Atty. Gen., John Doar, Richard K. Parsons, and Frank M. Dunbaugh, Attys., Civil Rights Division, Dept. of Justice, Washington, D. C., Edward L. Shaheen, U. S. Atty., for the Western District of La., Shreveport, La., for the United States.

Jack P. F. Gremillion, Atty. Gen., of the State of La., Baton Rouge, La., Carroll Buck, First Asst. Atty. Gen., Harry Fuller, Second Asst. Atty. Gen., Harry J. Kron, Jr., Asst. Atty. Gen., Baton Rouge, La., Ferdinand Cashio, Asst. Atty. Gen., Shreveport, La., Thompson L. Clarke, Dist. Atty., for the Sixth Judicial District, St. Joseph, La., for defendants.

BEN C. DAWKINS, Jr., Chief Judge.

1. This action was filed by the Attorney General of the United States on October 26, 1961, charging the defendants with engaging in acts and practices which deprive Negro citizens of their right to register to vote without distinction as to race or color. The case was tried December 5, 1962. Plaintiff filed its brief with suggested findings and conclusions on April 9, 1963; but despite repeated reminders and requests, defendants have never filed their brief.

2. Defendants in this case are the State of Louisiana and Miss Katherine Ward, Registrar of Voters of Madison Parish. Miss Ward has been registrar of Voters for Madison Parish since January 1955. She assumed the office vacated by her mother, Mrs. Mary K. Ward, who had been registrar for 31 years. As Registrar of Voters, Miss Ward's function is to receive applications for registration from prospective electors, to determine whether or not they are qualified to register to vote, and to register those applicants who are qualified. Miss Ward maintains her office at Tallulah, Louisiana, in Madison Parish, and also resides there.

3. Registration in Madison Parish is periodic so that every four years a complete reregistration is held. The present period began January 1, 1961. The only exception to the requirement of reregistration is in the case of illiterate persons who were registered prior to January 1, 1961.

4. In 1960 there were 3,334 white persons and 5,181 Negroes of voting age in Madison Parish. At the end of the last registration period, December 31, 1960, there were 2,713 persons registered to vote in Madison Parish. All of these registered voters were white persons. As of August 1, 1962, there were 1,760 persons registered to vote in the parish, all of whom are white persons. No Negro had been registered in Madison Parish during this century prior to the trial of this case. As of February 28, 1963, there were 1,918 white persons and 174 Negroes registered to vote.

5. Under Louisiana law, applicants for registration to vote are required to establish their identities to the satisfaction of the registrar. On January 16, 1961, the Lousiana State Board of Registration issued a letter to all Registrars of Voters of Louisiana outlining the type of proof which the registrars should accept under this requirement. The types of proof included such things as drivers' licenses, homestead exemption certificates, receipts for deposits on utilities, library cards, selective service registration cards, rent receipts, deeds or contracts, hunting or fishing licenses, copies of applications for automobile licenses, or letters from reputable citizens. If the registrar has good reason to believe that an applicant is not the person he represents himself to be, the registrar may require him to establish his identity by producing two credible persons registered to vote in his ward and precinct to identify him under oath. Under the practice in Madison Parish, at least since 1947, applicants who do not identify themselves to the satisfaction of the registrar are not permitted to fill

out an application form or otherwise commence or complete the registration process.

6. Miss Ward and her mother, Mrs. Mary K. Ward, who preceded her in office, prior to the trial of this case, have used the identification requirement to discriminate against Negroes:

    (a) Mary K. Ward told Negroes on many occasions when they tried to register from 1947 through 1954 that they would have to have two registered voters to identify them before they could be registered. Negroes were not asked for other reasonable identification nor was it accepted when offered.

    (b) White persons who were registered by Mary K. Ward were not required to produce identification.

    (c) Mary K. Ward referred several Negroes who attempted to register to the Sheriff of Madison Parish, C. E. Hester. Sheriff Hester on one occasion in 1954 told Negroes that he was tired of their trying to register to vote and that no Negro was going to register so long as he was sheriff. No Negro tried to register to vote again until August 1961.

    (d) Since the time Defendant Katherine Ward took office in January 1955 she has not required identification from applicants whom she knew or from applicants who had been previously registered in the parish. Since she knows most of the white people in the parish and very few of the Negroes, this policy alone inevitably operated to discriminate against Negroes. Inasmuch as no Negroes previously had been registered, that policy also inevitably discriminated against Negroes.

    (e) On August 28, 1961, four Negroes appeared at the office of Defendant Ward for the purpose of registering to vote. Defendant Ward would not permit them to make applications for registration but told them instead that they would need two electors to identify them. She did not ask the Negroes for any other form of identification nor would she have accepted any from them. She did not expect that any white persons would identify these Negroes. The Negroes tried unsuccessfully to persuade the Mayor of Tallulah to identify them or to help them find someone who would. They were thus deprived of the opportunity to apply for registration.

7. In September 1962, the defendant Registrar put into effect the new "citizenship" test adopted by the State Board of Registration in the previous month. This test is very fair, having been taken from the Department of Justice manual to be used by aliens in applying for citizenship. All applicants of both races now are required to pass it. In addition to these tests, all applicants since September 1962 are required to read and write from dictation a portion of the preamble to the Constitution of the United States. Under the "citizenship" test, an applicant for registration must answer correctly four out of six questions on citizenship, government, and history.

8. Prior to September 1962, the requirements for registration imposed by Defendant Ward permitted applicants to become registered if they were citizens not less than twenty-one years of age, if they possessed the necessary residence requirements, and if they had not been convicted of a crime. Applicants were not tested for their literacy, knowledge, intelligence or understanding. The application form was used as a means to obtain and record essential information regarding the substantive qualifications of applicants.

At about the time that the new requirements were put into effect in Madison Parish, Miss Ward abandoned the strict

identification practice which had prevented Negro applicants from making application for registration. Since the trial of this case, in December 1962, 174 Negroes have successfully registered to vote in Madison Parish.

9. The acts and practices of the defendants as set forth in Finding No. 6 have deprived Negro citizens of the right to vote without distinction of race or color.

10. Unless restrained by order of this Court, the Defendant State and the Defendant Registrar may continue to engage in racially discriminatory acts and practices, although at the trial Miss Ward testified she would not do so.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this action under 42 U.S.C. § 1971(d) and under 28 U.S.C. § 1345.

2. The Attorney General is authorized to institute this action on behalf of the United States under 42 U.S.C. § 1971(c) to obtain preventive relief against acts and practices by the defendants which would deprive other persons of rights and privileges secured by 42 U.S.C. § 1971(a).

3. The State of Louisiana is properly joined as a party defendant pursuant to Section 601(b) of the Civil Rights Act of 1960, 42 U.S.C. § 1971(c).

4. Acts and practices of the Defendant Registrar and her predecessor in office which violate 42 U.S.C. § 1971(a) are also the acts and practices of the Defendant State. Civil Rights Act of 1960, Sec. 601(b).

5. 42 U.S.C. § 1971(a) forbids any distinctions in the voting process, including registration for voting, based upon race or color.

6. Where it is shown, as in this case, that, prior to the trial, none of the more than 5,000 Negroes of voting age in the Parish had been registered since 1900, and a majority of the white persons of voting age were allowed to register to vote, and a number of Negroes attempted to register to vote, this evidence alone establishes a claim for relief under the Fourteenth and Fifteenth Amendments and under the Civil Rights Act of 1957, as amended. It must be concluded that Negroes were systematically excluded from registration for voting. United States v. Manning, 205 F.Supp. 172, 174 (W.D.La.1962).

7. The former practice of requiring Negro applicants for voter registration to be identified by two registered voters when only white persons were registered was discrimination *per se* in violation of 42 U.S.C. § 1971(a) and the Fourteenth and Fifteenth Amendments to the Constitution of the United States. United States v. Manning, supra.

8. In Madison Parish, the Registrar must accept from Negro applicants any reasonable identification, such as that suggested by the State Board of Registration. A registrar cannot constitutionally use the identification requirement in any manner which will impose a heavier burden upon Negro applicants than upon white applicants.

## DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date:

1. This Court finds specifically that the defendants have engaged in acts and practices which have deprived Negro citizens in Madison Parish, Louisiana, of the right secured by 42 U.S.C. § 1971(a).

2. It is ordered, adjudged and decreed that the defendant State of Louisiana and the defendant Katherine Ward, Registrar of Voters of Madison Parish, Louisiana, their agents, officers, employees, successors in office and all persons in active concert with them be and each hereby is enjoined from engaging in any act or practice which involves or results in distinctions of race or color in the registration of voters in Madison Parish, Louisiana. Specifically, each of said defendants and persons is enjoined from:

(a) Refusing to accept from Negro applicants for registration reasonable proof of their identity, such as:

(1) Authentic licenses or permits issued by any governmental

agency or authority, such as driving, hunting, or fishing licenses, library cards, or automobile registrations;

(2) Authentic military identification documents, such as selective service registration cards, discharge papers, or reserve unit identification cards;

(3) Authentic records of the possession or ownership of real property, such as rent receipts, deeds or contracts to purchase or lease, receipts for deposits on utilities, or homestead exemption certificates.

(b) Applying different and more stringent registration qualifications, requirements, procedures and standards to Negro applicants for registration than those which are applied to white applicants in determining whether or not such applicants are qualified to register to vote in Madison Parish, Louisiana.

3. It is further ordered that the defendant Registrar submit to the Clerk of this Court in writing and a copy thereof to the plaintiff on or before the tenth day of each month after the date of this Decree and until further order of this Court, a report as to her progress in receiving and processing applications for registration during the preceding calendar month. The report shall include:

(1) The dates and places applications were received during the preceding report period and the hours during which the registrar, or her deputy, if any, were available to receive applications.

(2) The action taken by the Registrar on applications for registration during the preceding report period which with respect to accepted applications will state the name and race of the applicant, and date of application; and with respect to rejected applications, the name and race of the rejected appli-

cant, date of application, and the specific reason for his rejection.

4. It is further ordered that defendant Registrar make available at the office of the registrar all registration records of Madison Parish, Louisiana, for inspection and photographing by agents of the United States at any and all reasonable times.

The costs incurred in this proceeding to date are hereby taxed against the defendant Ward, in her official capacity as Registrar.