Albert C. TONEY et al.

v.

N. A. WHITE, Chairman, Democratic Executive Committee of Tallulah, Louisiana, et al.

UNITED STATES of America

v.

Myrtis BISHOP, Registrar of Voters of Madison Parish, Louisiana, et al.

Civ. A. Nos. 15641, 15747.

United States District Court,
W. D. Louisiana,
Monroe Division.

Sept. 13, 1972.

No. 15641:

George M. Strickler, Jr., New Orleans, La., Richard B. Sobol, Washington, D. C., for plaintiffs.

Thompson L. Clarke, Dist. Atty., 6th Judicial District Court, Madison Parish, St. Joseph, La., William J. Guste, Atty. Gen., State of Louisiana, Baton Rouge, La., Sevier, Yerger & Sevier, Tallulah, La., for defendants.

No. 15747:

Richard G. Kleindienst, U. S. Department of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., Shreveport, La., for plaintiff.

Thompson L. Clarke, Dist. Atty., 6th Judicial District Court, Madison Parish, St. Joseph, La., John T. Seale, Asst. Dist. Atty., 6th Judicial District Court, Tallulah, La., for defendants.

## FINDINGS OF FACT

DAWKINS, Chief Judge.

1. These consolidated actions were filed respectively May 4, 1970 and June 8, 1970 under Sections 2, 11(a), and 12 (b), of the Voting Rights Act of 1965, and 42 U.S.C. § 1971(a) and (c). Private plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1971 et seq. and 28 U.S.C. §§ 2201 and 2202.

2. Plaintiffs charged defendants with having engaged in certain conduct which had the effect of depriving a number of eligible Negro voters of the right to vote in the April 4, 1970 primary election; a number of Negro voters were deprived of the right to become eligible to vote in this primary election; and a number of ineligible white voters were permitted to vote in this primary election for Mayor, Marshal, Board of Aldermen, and Democratic Executive Committee for the Village of Tallulah, Louisiana.

3. Defendant Myrtis Bishop is Registrar of Voters of Madison Parish, Louisiana. Her duties as such include, among other things, the registration of voters, purging from the registration rolls of those voters not qualified to remain on the rolls, and preparation, maintenance and canvassing of the official registration rolls.

4. The defendant Municipal Democratic Executive Committee of Tallulah, Louisiana is composed of three members. The duties of this committee include calling and conducting of Democratic municipal primary elections, and selection of commissioners and clerks to preside over the elections at each polling precinct within the municipal boundaries. Defendants N. A. White, John T. Seale, and Rev. Willie Johnson are, respectively, the Chairman and members of the Democratic Executive Committee of Tallulah.

5. Although a majority of the population of Tallulah, Louisiana is Negro, until recent years there has been no participation by Negroes in the political affairs of the community. Prior to 1961 there were no Negroes registered to vote in Tallulah and only a fraction of the Negro voting-age population was registered prior to passage of the Voting Rights Act of 1965, 42 U.S.C. § 1973 et seq. With prodding from this Court by issuance of an injunction, large numbers of Negroes have been allowed to register. At the close of registration for the April 4, 1970, Democratic Primary for municipal offices in Tallulah there were approximately 2,833 Negro voters and 2,422 white voters eligible to vote in the upcoming primary election for the offices involved.

6. On three occasions this Court has enjoined election officials in Madison Parish, Louisiana from engaging in discriminatory conduct against Negro voters. In United States v. Ward, 222 F. Supp. 617 (W.D.La.1963), rev'd on other grounds, 349 F.2d 795 (5th Cir. 1965), mod'f. on reh. 352 F.2d 329 (5th Cir. 1965), this Court permanently enjoined the defendants from discriminating against Negroes in the voter registration process in Madison Parish, Louisiana. January 24, 1968, in Brown v. Post, 279 F.Supp. 60 (W.D.La.1968), a decree was signed requiring election officials in Madison Parish to "administer the vot-

ing process in compliance with the applicable Louisiana and Federal law in such a manner that will afford equal opportunities to vote to all qualified voters regardless of race or color." The order specifically enjoined defendant election officials from engaging in any practices and procedures which may be discriminatory in fact. Again, this Court, on March 10, 1969, issued a similar order to the defendant election officials. United States v. Post, 297 F.Supp. 46 (W.D.La. 1969). In the latter two actions, this Court voided elections and required new elections to be held.

7. April 4, 1970, a primary election for Democratic party candidates for the municipal offices of Village Marshal, Mayor, Board of Aldermen and Democratic Executive Committee was held in Tallulah. Nine Negro and eight white electors qualified as candidates for these offices.

8. Under Louisiana law, registration of voters is closed thirty days prior to any primary or general election. No person is permitted to qualify to vote within this period. Thus, in this instance the registration for the primary to be held April 4, 1970 was closed March 5, 1970. The purpose of this law is to give the Registrar time within which to prepare voting rolls for use at the various precincts by the election commissioners.

9. Louisiana law further requires the registrar to cancel annually from the registration rolls the names of those registrants who have not voted within the preceding four-year period. L.S.A.–R.S. 18:252. The applicable procedure to be followed is set forth in L.S.A.–R.S. 18:240.[1] Any registrant subject to cancellation must be so notified and given the opportunity to appear before the registrar within a specified time and show cause why his registration should not be

---

1. Registrar's duty to challenge for failure to vote

(1) In every parish in which the provisions of this Part are or shall become applicable, the registrar shall, by October 1, 1955, and at least annually thereafter, cancel from the rolls the name of each registrant who has not voted within the preceding four year period in either a primary, general or special election or an election at which is submitted the question of incurring debt and issuing bonds or of levying special taxes;

. . . .

(2) The registrar shall, by carefully inspecting the voting record of every voter, determine which registrations are subject to cancellation in accordance with the provisions of Sub-section (1) of this Section. If the registrar shall determine that any registration is subject to cancellation, he shall promptly notify the registrant by mail, using P.O. Form 3547 —Requested, and otherwise, if necessary, to appear within ten days from the date of said notice, to show cause why his name should not be cancelled from the registration records. . . .

This notice shall be published in the official journal, at the expense of the parish or municipality, as the case may be, and shall be published for two consecutive days, except where no daily paper is published, in which case one pub-

lication shall be sufficient. When the official journal is a daily paper, the notices shall be published on the same two consecutive days of each week, the days to be designated by the registrar, provided that no publication shall be made on a Sunday. If no paper is published in the parish, one publication in a newspaper of general circulation therein shall be sufficient, provided that no publication shall be made on a Sunday. The published notices shall require the registrants to appear within three days of the last publication and prove their right to remain registered. If any such registrant fails to appear within three days from the date of the last publication or within ten days from the date of the mailing of the notice, whichever date is later, the registrar forthwith shall mark his name cancelled from the registration records and shall file the records in the "Closed and Disqualified File." If any such registrant appears within the time aforesaid and requests that his registration be reinstated, the registrar, if satisfied that the registrant has identified himself, will mark on the registration records the date and the word "Reinstated". Reinstatement shall have the same effect as a new registration, except that notice of registration shall not be sent to the registrant as set out in R.S. 18:237(1).

cancelled. If such registrant appears within the specified time and satisfactorily identifies himself, the registration record must be marked "Reinstated"; and he is entitled to vote as before. Pursuant to the above statute, Bishop mailed notices to approximately 141 registrants, all but 11 of whom were Negroes, notifying them that her records reflected irregularities in their registration for the reason that they had not voted within the previous four years.[2] This notice advised the registrants that they could appear within ten days and show cause why their names should not be erased from the official roles. However, on March 5, 1970, the day upon which registration for the April 4 primary was closed, Bishop caused to be published in the local newspaper (the paper is published only once weekly) a notice advising the 141 registrants that they would be removed from the rolls for failure to vote in the preceding four-year period.

10. This publication did not contain any notification, as required by law, of the registrants' rights to appear and be reinstated or reregistered. Bishop failed to reinstate and removed from the rolls those who did appear and did prove their right to remain thereon, notwithstanding

Louisiana law which requires that if the time within which a registrant must appear runs into the 30-day period when the books are closed for registration, a registrant who appears and satisfactorily identifies himself will not be deprived of his right to vote due to cancellation.[3] Nor should four who were registered have been on the list for failing to vote. Bishop admitted that these persons were included by mistake. In one instance, no notice was given to the person involved that such a mistake was made and that he could exercise his franchise.

11. The period granted by the Registrar for an appearance for reinstatement was March 4 through March 13, 1970. March 4 was the day the letters were sent out. March 7 and 8 (Saturday and Sunday respectively) the Registrar's office was closed. It was also closed March 11, 12 and 13 due to Bishop's being out of town attending a State convention. At most, the office was available to those purged from the rolls for four days. There were 65 letters returned as non-deliverable so these persons only had one day, March 6, 1970, within which to appear. (Statute allows 3 days from publication or 10 days from notice, whichever is later.) However, the publication contained no lan-

2.

### VOTERS OF WARD 4 OF MADISON PARISH
### ORDERED TO SHOW CAUSE BY LETTER OF
### MARCH 4, 1970

| WARD 4 PCT. | TOTAL SCRATCHED | DEMO. | REP. | ST. R. | CITY | NON. | TOTAL DEM. CITY |
|---|---|---|---|---|---|---|---|
| 2 | 30 | 23 | 5 | 2 | 14 | 16 | 12 |
| 3 | 34 | 29 | 5 | 0 | 26 | 8 | 21 |
| 4 | 7 | 6 | 1 | 0 | 4 | 3 | 4 |
| 5 | 28 | 23 | 4 | 1 | 28 | 0 | 23 |
| 6 | 6 | 4 | 2 | 0 | 6 | 0 | 4 |
| 7 | 8 | 7 | 1 | 0 | 4 | 4 | 4 |
| | 113 | 92 | 18 | 3 | 82 | 31 | 68 |

Of the 68 persons, 2 of them actually voted in the election; one of them was properly registered on another registration; one appeared improperly on the list. In addition to these four, five others were registered as white. This process leaves a total of 59 persons affected within the city of Tallulah.

3. See Finding of Fact No. 12 *infra.*

guage to the effect that they could "show cause" within the period and not be purged.[4]

12. On returning from the convention, Bishop decided to extend the period four days. However, she never publicly communicated this decision to anyone involved.

13. This purge, for all intents and purposes, was conducted within the 30 days prior to the election. Bishop sought advice from her legal advisor as to the legality of the timing of the purge. The response was approval. However, it seems that this is not the opinion of the Attorney General of Louisiana in regard to L.S.A.–R.S. 18:240:

"Although the above referred to Section 240 fixes no time when the Registrar should begin his determination of which registrants are subject to cancellation, it is presumed that the Registrar will perform his duties according to the intent of the law as expeditiously as possible, so that by October 1 of any year subsequent to October 1, 1955, such cancellations as should be made will be made in the records. It would seem, therefore, that orderly procedure would require that within a reasonable time after the voting periods the Registrar examine the list and whenever it is found by such examination that a name should be cancelled, notice should be promptly given to that registrant, and publication of notice made as above set . . It would also appear that if the Registrar waits until 30 days before an election to begin the performance of his duties, this would not be within the spirit of the law. If, however, the time within which a registrant should be called upon to appear before the Registrar should fall within the 30-day period when the books are closed for

---

4.  STATE OF LOUISIANA, PARISH OF MADISON
REGISTRATION OFFICE

Tallulah, Louisiana
March 4, 1970

Dear Sir:

You are hereby notified that our registration office records reflect an irregularity in your registration for the following reason.

You have not voted within the preceding four year period in either a primary, general or special election or an election at which is submitted the question of incurring debt and issuing bonds or of levying special taxes.

You are hereby, notified, that on or before the 13th day of March, 1970, a period of ten days from the mailing date of this citation, during office hours, you are to show cause in person if any you have, before the undersigned Registrar of Voters for the Parish of Madison, State of Louisiana; why your name should not be erased from the official precinct registers of Madison Parish.

s/ MYRTIS BISHOP
REGISTRAR OF VOTERS

THE MADISON JOURNAL—Thursday, March 5, 1970

NOTICE TO

REGISTERED VOTERS

The following named individuals are herewith given public notice, and likewise, the public is also notified that our registration office records reflect an irregularity in each registration due to the fact that they have not voted in any election within the last four years. Each individual will therefore be removed from the registration rolls of Madison Parish.

Myrtis Bishop, Registrar of Voters

Paragraph which appeared above those listed in the paper as challenged.

registrations, it is our opinion that if the registrant identifies himself to the satisfaction of the Registrar, his name will be reinstated, the meaning of which is that his name will not then be cancelled at all and he would not be deprived of the right to vote because of cancellation. On the other hand, it is our opinion that when once the name of the registrant is cancelled, he could not register during the 30-day period when the books are closed for registrations.

Op.La.Atty.Gen., 1956–58, pp. 209, 210–11."

14. Bishop also challenged 29 Negroes for failure to report a change of address.[5] They were notified that they were to appear at the Registrar's office to show cause why their names should not be removed from the official voter rolls. This challenge was based on L.S.A.–R.S. 18:132.[6] In reality, these people were being challenged for two reasons: (1) failure to report a change of address and/or (2) being incorrectly listed as residing within the Village of Tallulah. This challenge was begun when two whites presented lists of persons to purge from the rolls to Bishop.[7] These lists contained approximately 150–200 names, presumably all black. L.S.A.–R.S. 18:132 and 133 provide the basis and procedure for removing names under these circumstances.[8] Bishop failed to strictly comply with the procedures

5. There is disagreement as to the actual consequences of these 29 persons challenged presumably for change of address. Twenty-four appeared and were reinstated, but 12 of this number were removed from the Tallulah municipal, as opposed to the Madison Parish registration rolls. Of the 29 challenged, 5 did not show cause, 2 whose registration records were mistakenly left indicating "city" eligibility after their appearance, and the 12 mentioned above should be added to this, which gives a total of 19 affected by the challenge.

6. 18:132. Illegal or fraudulent registration; removal or other loss of right; cancellation of registration; affidavit; absence from state; erasure of name from precinct register

Whenever the registrar has reason to believe that any name upon the books of registration has been illegally or fraudulently placed therein, or that any person has lost the right to remain thereon, he shall immediately notify the person by mail, at his address appearing upon the precinct register, of the alleged irregularity in registration, sending with the notification a printed citation requiring the person to appear within ten days from the mailing of the notice and citation, which date shall be stated in the citation, to show cause why his name should not be erased from the precinct register. The registrar, as soon as at least six names have accumulated, or in any event within not more than five days after mailing the notification, shall publish a notice segregating such names by ward and precinct, and requiring the registrants to appear in his office and prove the correctness of their registration.

7. At various times in other elections Wyche, a black candidate for Marshal, presented lists to Bishop. She challenged these persons in a similar manner. At least once she required Wyche to present affidavits, but on at least one other occasion, she did not require such presentment.

8. REGISTRATION OF VOTERS
R.S. 18:133
Note 1
§ 133. Illegal registration or loss of right to vote; notice to registrant; erasure of name on failure to prove right

Upon an affidavit signed and sworn to in duplicate before and filed with the registrar or his deputy by any two bona fide registered voters of the parish, to the effect that after reasonable investigation and on information and belief certain persons are illegally registered, or have lost their right to vote in the precinct, ward, or parish in which they are registered by reason of removal or otherwise, the registrar shall immediately, or, in any event, within forty-eight hours, notify the registrants by mailing to them postage prepaid, at the addresses given in the precinct register, the duplicate copy of the affidavit, together with a printed citation requiring them to appear in person before the registrar or his deputy within ten days from date of the mailing of the duplicate affidavit and citation, which date shall be stated in the citation, and prove their right to remain on the registration rolls by affi-

set forth in the statutes; she did not require the affidavit specified by statute; nor did she comply with statutory provisions setting deadlines for newspaper publication; and the publication included names of persons who had previously responded to their letter of notification and had been, according to the Registrar "reinstated".

15. It should be noted that prior to this date, Bishop had not conducted a canvass of her records, although she was aware of her statutory obligation to do so. She relied primarily upon people, both black and white, interested in the elections to present names of persons to be challenged. Thus, she relied completely upon voluntary sources.

16. Louisiana statutory and constitutional law provides for a system of absentee voting and specifies the classes of registrants who may take advantage of that system. (L.S.A.–Const. Art. VIII § 11, L.S.A.–R.S. 18:1071). L.S.A.–R.S. 18:1080 [9] requires registrars to canvass their registration records and to direct a letter to those persons who have only voted absentee for the previous two-year period. Each person is required to substantiate his right to vote absentee. If this is not done, the registrar is to initiate the cancellation of such person's registration. At no time prior to the April 4 primary has Bishop complied with this statutory directive to registrars.

17. The results of the election well could have depended upon application of this statutory directive: [10]

| OFFICE | RACE OF CANDIDATE | MACHINE TOTAL | ABSENTEE | TOTAL |
|---|---|---|---|---|
| **MAYOR** | | | | |
| H. Brown | (N) | 1878 | 28 | 1906 |
| W. Johnson | (N) | 30 | 0 | 30 |
| W. Sevier, Jr. | (W) | 1852 | 194 | 2046 |
| **MARSHAL** | | | | |
| D. Williamson | (W) | 1733 | 183 | 1916 |
| Z. Wyche | (N) | 2023 | 30 | 2053 |
| **BOARD OF ALDERMEN** | | | | |
| R. Graves | (W) | 1710 | 194 | 1904 |
| T. Ivey | (W) | 1710 | 190 | 1900 |
| L. King, Sr. | (N) | 1743 | 28 | 1771 |
| J. Storey | (W) | 1723 | 191 | 1914 |
| A. Toney | (N) | 1783 | 24 | 1807 |
| J. Walk | (N) | 1737 | 23 | 1760 |
| **DEMOCRATIC EXECUTIVE COMMITTEE** | | | | |
| C. Adams | (W) | 1661 | 192 | 1853 |
| J. Crockett | (N) | 1844 | 32 | 1875 |
| O. Daily | (N) | 1794 | 25 | 1819 |
| C. Regan | (W) | 1653 | 189 | 1824 |
| G. Wall, Jr. | (W) | 1668 | 192 | 1860 |
| B. Williams | (N) | 1802 | 27 | 1829 |

18. There is no doubt in this Court's mind that Bishop was unaware of this provision of the law. Her office operates on a manual which is a compendium of state election and registration laws provided by the Louisiana Secretary of State. This particular provision had been omitted from the manual. However, she did have access to legal assist-

---

davit of three bona fide registered voters in the form as provided in R.S. 18:132. The registrar shall immediately make a similar publication, as provided for in R.S. 18:132, and if the challenged registrants fail, within the same delays provided in that Section, to prove their right to remain on the rolls, as in that Section provided, the registrar shall erase their names from the precinct register.

9. R.S. 18:1080    ELECTIONS
§ 1080. Cancellation of registration of absentee voters
  If, while canvassing the rolls as required in R.S. 18:131, or while inspecting the voting records of voters as required in R.S. 18:240, the registrar of voters shall find that a certain voter is posted as voting only absentee for a period of two years, it shall be the duty of the registrar to address a letter to that voter, asking the voter to submit in writing the reason for such continued absentee balloting. Unless the voter makes an immediate and satisfactory reply, meeting the constitutional requirements contained in Article VIII, Section 11 of the Constitution of 1921 as amended as to gain or loss of residence, the registrar shall cancel the registration of that voter by the procedure set out by the law governing cancellation.
Added by Acts 1960, No. 254, § 2.

10. Plaintiff's exhibit 9 contains the voting and registration records of 62 Tallulah registrants who should have been required to submit an explanation of the reason why they had voted only absentee for the previous two or more years.

ance provided to the Registrar by the District Attorney.

19. Bishop testified that, after being made aware of this law by the complaint filed in this suit and a letter from the Louisiana Secretary of State, letters were sent pursuant to the statute. Approximately 25 subsequently were removed from the registration rolls as their explanation was not one of those constitutionally permissible. However, letters were not sent to all registrants in this category because of Bishop's personal knowledge of their situation.

20. By stipulation, it was agreed that Bishop, from the time she took office until March 5, 1970, removed more white voters from the registration rolls than Negroes.

21. It is also necessary to take cognizance of the fact that recently all political factions of the parish have been extremely active in the election process. This fact is demonstrated by the turnout in the April 4 primary, wherein over 4,000 persons voted out of 5,255 persons registered.

22. We find that the record does not reveal that the acts of commission and omission of the Registrar were conducted for the specific purpose of diminishing the number and efficacy of black votes and inflating the number of white votes.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of these actions under Section 12(f) of the Voting Rights Act of 1965, 42 U.S.C. §§ 1971(d) and 1973j(f) and 28 U.S.C. §§ 1343(3)(4) and 1345.

2. The Attorney General of the United States is authorized to institute action on behalf of the United States pursuant to Section 12(d) of the Voting Rights Act of 1965 (42 U.S.C. § 1973j(d) and 42 U.S.C. § 1971(c).

3. The Fifteenth Amendment to the Constitution of the United States prohibits states from denying or abridging the right of citizens to vote on account of race. And Section 2 of the Voting Rights Act of 1965 prohibits imposition of any practice or procedure which has the effect of denying or abridging the right of any citizen of the United States to vote on account of race or color.

4. Section 11(a) of the Voting Rights Act of 1965 prohibits any person acting under color or law from denying any qualified voter the right to vote or from willfully failing or refusing to tabulate, count, and report such person's vote.

5. 42 U.S.C. § 1971(a) forbids any distinctions based upon race in the voting process.

6. Defendant Bishop, as Registrar of Voters, had a duty under the Fifteenth Amendment, as well as under Sections 2 and 11(a) of the Voting Rights Act of 1965 and 42 U.S.C. § 1971(a), not to engage in any discriminatory acts or practices based upon race or color in administering Louisiana's Election laws. This duty includes the duty to refrain from engaging in conduct which involves or results in any distinction based upon race, and to refrain from applying or neglecting to apply any procedure which will have the effect of diluting the number of Negro votes while inflating the number of white votes.

7. While purging or failing to purge voter rolls, Bishop, as Registrar of Voters, was acting under color of state law.

8. Notwithstanding the fact that the record does not reveal any calculated racially motivated purpose for the acts and omissions of the Registrar, the acts and practices of this defendant constitute an unlawful deprivation of the right of qualified Negro voters to vote regardless of race or color as provided by the Fifteenth Amendment and the Voting Rights Act of 1965, especially in light of the State Attorney General's opinion as to the timing of these acts and practices.

9. Failure of the defendant to comply in every detail with the Louisiana statutes pertaining to purging of the voter rolls does not serve to void the ballot of otherwise qualified voters, and this opinion expressly so holds. "However, if there is discrimination in fact in the ad-

ministration of the voting process, this will be adequate legal ground to void the election regardless of the good faith intentions of the election officials." Brown v. Post, supra, 279 F.Supp. at 64.

██ 10. Where, as here, there has been a history of racial discrimination in the voting process, and a public official applies or neglects to apply the laws pertaining to the purging of voter rolls contrary to the spirit of Louisiana law, the result of which is that a substantial number of Negroes are purged and few whites are purged, when by proper application of the law fewer Negroes would have been purged and more whites would have been purged, we conclude here that Negroes have been discriminated against in the administration of the voting process in violation of the Fifteenth Amendment and of Sections 2 and 11(a) of the Voting Rights Act of 1965 and 42 U.S.C. § 1971(a).

## ORDER AND DECREE

Pursuant to the Findings of Fact and Conclusions of Law entered this date, it is ordered, adjudged and decreed that:

1. The April 4, 1970 Democratic primary election is null and void insofar as the offices of Mayor, Board of Aldermen and Democratic Executive Committee of Tallulah, Louisiana, are concerned.

2. The defendant Myrtis Bishop, Registrar of Voters of Madison Parish, with her agents, employees and successors, shall administer the voting process in compliance with applicable Louisiana and Federal law in such manner that will afford equal opportunities to vote to all qualified voters regardless of race or color.

3. The official defendants are specifically and permanently enjoined from engaging in the practices which were found to be discriminatory in the April 4, 1970 primary election and any other practices and procedures which may be discriminatory in fact.

4. It is further ORDERED, ADJUDGED and DECREED that the Chairman and members of the Madison Parish Board of Supervisors of Elections and any other persons who are required by law to act, shall, within the time provided by Louisiana's election laws, call and conduct a special primary election for the offices of Mayor, Board of Aldermen, and Democratic Executive Committee of the Village of Tallulah, Louisiana, among those persons who were qualified candidates for these offices in the April 4, 1970 primary election. If a second primary, or general election, is required under Louisiana law, these also shall be called.

5. This Court retains jurisdiction of this cause for the purpose of issuing any and all additional orders herein that may in its judgment become necessary or appropriate for the purpose of modifying and enforcing this decree.

6. Costs incurred in this proceeding are hereby taxed against defendants.