Albert C. TONEY et al.,
Plaintiffs-Appellees,

v.

N. A. WHITE et al., Defendants-
Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Myrtis BISHOP et al., Defendants-
Appellants.

No. 72–3307.

United States Court of Appeals,
Fifth Circuit.

Dec. 3, 1973.

————◆————

John T. Seale, Asst. Dist. Atty., Tallulah, La., for defendants-appellants.

George M. Strickler, Jr., Asst. Atty. Gen., New Orleans, La., for Toney and others.

J. Stanley Pottinger, Civil Rights Div., Dept. of Justice, David L. Norman, Asst. Atty. Gen., Civil Rights Div., Dept. of Justice, M. Karl Shurtliff, Gerald W. Jones, Attys., Civil Rights Div., Dept. of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., Shreveport, La., for U. S.

Lloyd N. Cutler, David S. Tatel, Washington, D. C., Herman Wilson, Jackson, Miss., for amicus curiae—Lawyers Committee for Civil Rights, etc.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

BELL, Circuit Judge:

This appeal arises out of suits filed to set aside the results of a Democratic primary election on the basis of discriminatory conduct against black voters by the Voter Registrar.[1] The primary was conducted on April 4, 1970 in Tallulah, Louisiana, for Mayor, Town Marshall, Members of the Board of Aldermen, and Members of the Democratic Executive Committee. The black candidate for the office of Town Marshall was successful, as was one of the black candidates for the three positions on the Democratic Executive Committee. All other races were won by whites with margins ranging from 24 to 140 votes.

The discrimination occurred within a thirty day period immediately prior to the election. On September 13, 1972, the district court enjoined defendants from engaging in further discriminatory practices, voided the primary election results, except as to the office of Town Marshall, and ordered that a new primary election be held with the voters limited to those persons eligible to vote in the 1970 primary. Toney v. White, W.D.La., 1972, 348 F.Supp. 188.

A panel of this court affirmed on March 19, 1973 as to the prospective injunctive relief but reversed that portion of the judgment which voided the election and ordered the primary races to be rerun. Toney v. White, 5 Cir., 1973, 476 F.2d 203. On June 1, 1973 the court, on motion of plaintiffs, determined to rehear the matter en banc. It was heard on October 17, 1973, and, after due consideration, we vacate that portion of the panel decision which reversed the district court. The result is that the district court judgment voiding the primary election as to certain races and ordering those primary races to be rerun is reinstated but with the modification, due to the passage of time, that the next regular primary election, which under the Louisiana statutes will be held in March, 1974, be substituted for the special election ordered by the district court.

---

1. The complaint of private plaintiffs was filed on May 4, 1970. The complaint of the United States was filed on June 8, 1970 pursuant to the Voting Rights Act of 1965. See 42 USCA, §§ 1971(a) and (c), 1973 and 1973j(d).

The panel decision rests on the two-pronged approach that (1) the discrimination in question was not "gross, spectacular [and] completely indefensible", and (2) that it did not appear that no effective judicial remedy was available to plaintiffs prior to the holding of the election, 476 F.2d at 209, citing Bell v. Southwell, 5 Cir., 1967, 376 F.2d 659, 664.

Reference is made to the prior opinions, 348 F.Supp. 188, and 476 F.2d 203, for a full statement of the facts. It is sufficient for our purposes to set out the operative facts. The racial discrimination in issue consisted of the Registrar purging the voter rolls in a manner directed at black voters but not at white voters. This discrimination was compounded by the use of purging procedures which were not consistent with Louisiana law from the standpoint of notice and opportunity of the registrant to be reinstated. In addition, the list of those voting by absentee ballot, mainly white voters, was not purged as required by Louisiana law. In connection with this latter fact, the district court made the well supported finding that the results of the election could well have depended on the absentee vote and thus on the failure to purge this list.

The pertinent findings and conclusions of the district court are as follows:

(Findings of Fact)

"22. We find that the record does not reveal that the acts of commission and omission of the Registrar were conducted for the specific purpose of diminishing the number and efficacy of black votes and inflating the number of white votes."

(Conclusions of Law)

"8. Notwithstanding the fact that the record does not reveal any calculated racially motivated purpose for the acts and omissions of the Registrar, the acts and practices of this defendant constitute an unlawful deprivation of the right of qualified Negro voters to vote regardless of race or color as provided by the Fifteenth Amendment and the Voting Rights Act of 1965, especially in light of the State Attorney General's opinion as to the timing of these acts and practices."

"10. Where, as here, there has been a history of racial discrimination in the voting process, and a public official applies or neglects to apply the laws pertaining to the purging of voter rolls contrary to the spirit of Louisiana law, the result of which is that a substantial number of Negroes are purged and few whites are purged, when by proper application of the law fewer Negroes would have been purged and more whites would have been purged, we conclude here that Negroes have been discriminated against in the administration of the voting process in violation of the Fifteenth Amendment and of Sections 2 and 11(a) of the Voting Rights Act of 1965 and 42 U.S.C. § 1971(a)."

It was the view of the district court that the remedy of voiding an election was appropriate regardless of the good faith intentions of the election officials once discrimination in fact was proven in the administration of the election process. The election was thereupon voided except as to the office of Town Marshall.

There are three approaches which would lead to affirming the district court's action in voiding the election. One would be to approve the view of the court that a new election was required, *ipso facto*, regardless of good faith on the part of the Voter Registrar, once the proof established, as it did, that the voting process was infected with racial discrimination. We pretermit examining this broad rule which does not appear to have a nexus to the substantiality of the discrimination or its effect on the results of the election.

Another would be to examine the finding and conclusion of the district court that the acts of commission and omission of the Voter Registrar were not ra-

cially motivated.[2] Finding of Fact 22 and Conclusion of Law 8, *supra*. Such an examination would be for the purpose of determining the validity of the first premise of the panel decision, that there was no gross discrimination. We also pretermit this approach, given our view, hereinafter set out, that the second premise of the panel decision, i.e., that plaintiffs were not diligent in seeking available pre-election judicial relief, is without adequate foundation. We thus proceed to an examination of this premise of the panel decision.

We reach our decision in the frame of reference of the decided cases involving the question whether to void an election in the face of a finding of racial discrimination in the voting and election process. The first category of cases is represented by Hamer v. Campbell, 5 Cir., 1966, 358 F.2d 215, where pre-election injunctive relief was sought and post-election relief in the form of voiding the election was ordered on the basis that pre-election relief should have been granted. The court said:

> "This action does not mean that we necessarily would set aside every election in which a substantial number of citizens have been denied the right to vote. This is not a case where an election is challenged for the first time after it is held. Here appellants attempted to enjoin the election, and failing where they should have succeeded, they were diligent in seeking to have this failure rectified by our reversal prior to the election." 358 F.2d at 222.

A new election was also ordered in Hadnott v. Amos, 1969, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336, where pre-election relief was sought and the Supreme Court reversed the decision of the district court which had denied pre-election relief. Hadnott v. Amos, M.D.Ala., 1968, 295 F.Supp. 1003.

Hadnott v. Amos involved the right of black citizens to be candidates. *Hamer* involved the right of black citizens to become voters and to be candidates. The facts demonstrate in each case that the discrimination could have affected the results of the elections. There is no finding in either case of an intent to discriminate or of gross or spectacular discrimination. They simply turn on affording post-election relief in the form of a new election where error was found in the denial of pre-election relief sought.

Bell v. Southwell, 5 Cir., 1967, 376 F.2d 659, is a case of a wholly different type. There the racial discrimination occurred on election day and in the method of holding the election. There was no opportunity to seek pre-election relief, and it was likely that the result of the election would have been the same notwithstanding the discrimination. The court fashioned a new rule in these circumstances: A new election if the racial discrimination was gross, spectacular and wholly indefensible. 376 F.2d at 664.

The holding of Bell v. Southwell is to be compared with Hamer v. Ely, 5 Cir., 1969, 410 F.2d 152, where we affirmed the refusal of the district court to set aside an election. We agreed that the discrimination did not reach the level of those serious violations of voting rights where a state election should be voided, citing Bell v. Southwell, 410 F.2d at 156.

The principle of requiring diligence is seen in McGill v. Ryals, M.D.Ala., 1966, 253 F.Supp. 374, appeal dism'd, 385 U.S. 19, 87 S.Ct. 212, 17 L.Ed.2d 17, in which a new election was denied where no particular election was attacked, where the complaints of racial discrimination were of long standing and where judicial relief had not been sought prior to the election.

---

2. The panel decision points out that there was no appeal by plaintiffs from the finding of the district court that the record did not establish racial motivation on the part of the Voter Registrar.

The requirement of diligence was also in issue in Smith v. Paris, M.D.Ala., 1966, 257 F.Supp. 901, where the district court found racial discrimination in an election but refused to set aside the election because plaintiffs had known of the discrimination for six or seven weeks. They had waited until the election was in progress before seeking judicial relief. Hamer v. Campbell, *supra*, was cited as the basis for requiring diligence. On appeal, however, this court modified the district court order to restrict the terms of office involved to two rather than four years by requiring new elections at the next regular elections which were to be held in 1968. Smith v. Paris, 5 Cir., 1967, 386 F.2d 979. The 1968 elections were thereafter set aside on a petition of the United States filed five days before the election. The district court found that the United States was diligent when the question was considered in light of the defendant's failure to have corrected the system after the district court's 1966 finding of unconstitutionality. United States v. Democratic Executive Committee, M.D.Ala., 1968, 288 F.Supp. 943.

The instant case does not fit the mold of any one of these cases. It does not fit Bell v. Southwell because of the findings of the district court of no racial motive, a finding which we, as stated, need not consider.[3]

It does not fit within the teaching of Hadnott v. Amos, and Hamer v. Campbell because of the missing element of failure to seek pre-election judicial relief. It clearly contains the other element of those cases: racial discrimination which might have affected the election results.

■ This leaves then the question of what diligence in seeking pre-election judicial relief was required of plaintiffs under the circumstances. Upon reflection, we conclude that the panel require-

ment unduly freighted the Fifteenth Amendment right to equal treatment in the election process. As the Supreme Court said in Hadnott v. Amos in the Fifteenth Amendment context of disparate treatment on the grounds of race: "Unequal application of the same law to different racial groups has an especially invidious connotation." 394 U.S. at 364, 89 S.Ct. at 1104, 22 L.Ed.2d at 341.

■ The right to vote on an equal basis with other citizens is a fundamental right in a free society; indeed, in any viable form of representative government. It is preservative of all governmental rights. Yick Wo v. Hopkins, 1886, 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220, 226. "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." Harman v. Forssenius, 1965, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50, 57 (poll tax).

■ We agree with the panel that the law imposes the duty on parties having grievances based on discriminatory practices to bring the grievances forward for pre-election adjudication. We also agree that the failure to require prompt pre-election action in such circumstances as a prerequisite to post-election relief may permit, if not encourage, parties who could raise a claim "to lay by and gamble upon receiving a favorable decision of the electorate" and then, upon losing, seek to undo the ballot results in a court action. 476 F.2d at 209.

This reasoning is sound in the abstract but it must be applied to the facts and circumstances obtaining in the particular case. Here we have a gray area where the discrimination, even if known before the election, was discovered at a late hour.

The district court made no finding on the availability of pre-election judicial

---

3. The Voter Registrar here was under a permanent and specific injunction not to discriminate against voters on the basis of race, which injunction was entered at the specific direction of this court. United States v. Ward, W.D.La., 1963, 222 F.Supp. 617, rev'd, 349 F.2d 795 (5 Cir. 1965) modified on reh., 352 F.2d 329 (5 Cir. 1965).

relief. The failure of plaintiffs to seek such relief was not asserted as a defense —it was raised for the first time in this court. Ordinarily we would remand for findings of fact but the record here makes it plain that there is no merit in this defense and remand is not warranted. The burden to establish such a defense would be on the Voter Registrar and we turn to the undisputed facts to test the merit of this belated defense.

■ It was the Registrar who was charged by law, state and federal, with administering the voter registration process. It was the Registrar's duty to discharge her official duties for the benefit of the electorate and in a lawful manner. Any error of commission or omission on the part of the Registrar giving rise to racial discrimination would result in the loss of constitutional rights to the black voters wholly through the acts or fault of the Registrar. To excuse such conduct on the part of a public official would tend to exalt misfeasance or nonfeasance. On the other hand, citizens having grievances may not lay by to see how the election will turn out before complaining. Given these alternatives, we hold that there is a heavy burden on the Voter Registrar to show that there was a deliberate bypass of pre-election judicial relief.

■ The facts here make it appear as a matter of law that there was no such bypass. The racially discriminatory purge, for failure to vote and for failure to report changes of address, began only thirty days before the election. While the notice procedures were inadequate, they nonetheless extended for several days the time required to complete the process. Further, the record does not show that the other discrimination, the failure to purge the absentee voter roll, was known at all to plaintiffs prior to the election. Indeed, the position of the Voter Registrar was that she did not know that she was required by law to purge this list.

We must have in mind that it would have been necessary for the private plaintiffs to obtain counsel or the assistance of the Department of Justice and, in either event, it would have been necessary for counsel to investigate the facts before filing suit. Here an investigation would have entailed a study of all records having to do with purging, or the absence of purging, for failure to vote or to report changes in address. An investigation would have required a study of absentee voting records for recent elections to determine whether the rolls were purged, under Louisiana law, of those who had voted only by absentee ballot and had failed to show good cause for such continued absentee voting. La.R.S. 18: § 1080. It would have been exceedingly difficult for counsel to have had sufficient facts in hand prior to the election to warrant signature of counsel certifying, under Rule 11, F.R.Civ.P., that there was good ground to support claims made in the complaint.

The suit of private plaintiffs was filed promptly after the election, as was the suit of the Department of Justice. Given the facts, we think that each suit was filed with diligence.

■ We must take care not to hamstring the administration of the Voting Rights Act or to deny rights under the Fifteenth Amendment on a standard less stringent than that of requiring public officials in charge of voting registration and the conduct of elections to show by clear and convincing proof that there was in fact a deliberate bypass of a pre-election judicial remedy. The record precludes such a showing on the part of the Voter Registrar in this case. This leaves a case of discrimination based on race and of such a substantial nature as possibly to have affected the outcome of the election. Thus the district court did not err in setting aside the primary election.

■ We are advised that the next regular election in Tallulah begins with a primary on March 23, 1974. There

has been a lapse of more than one year since the district court entered its order, and only five months remain before the next primary election. In these circumstances, given both the expense of holding a special election and the short terms of office which would remain between the special election and the normal expiration of the present terms of office in July, 1974, we conclude that it is appropriate to modify the order of the district court to permit the 1974 regular elections, primary and otherwise, to be substituted for the special elections required under that order.[4]

As modified, the judgment of the district court is

Affirmed.

COLEMAN, Circuit Judge (concurring in the result):

Even for an election controversy, this is an unusual case. The District Court held the municipal primary election in Tallulah, Louisiana, to have been a lawful one as to the nominee for Town Marshal but void as to all nominees for other offices. This on its face is a *non sequitur*. I assume the *en banc* Court did not mean to affirm that aspect of the judgment below.

Leaving that aside, I do not see that the *en banc* opinion does any harm to basic legal principles. Most assuredly it reaches a *harmless result*, so I concur in the result.

The opinion scrupulously avoids any appearance of denigrating the unassailable principle that pre-election grievances allegedly fatal to the validity of an entire election must promptly be asserted if they are to furnish the catalyst by which that election is to be set aside. Any other rule would make a shambles of the highly esteemed right of franchise and would consequently reduce the

lofty language of Yick Wo v. Hopkins to a cynicism. So, I heartily agree with the declaration of the *en banc* opinion that "citizens having grievances may not lay by to see how the election will turn out before complaining". At least, it is fortunate that this principle is not to be sacrificed upon the altar of political dissensions existing in one small city in a six state Circuit.

It appears that the sole precedential impact of the decision is to be found in its elaboration upon where the burden of proof lies in cases involving a "lay by". I doubt that the record appropriately raises this question for our review. If it does, then I would hold that a "lay by" clearly appears from the evidence. It was an undisputable fact that the Registrar pursued a purge not permitted by Louisiana law. Notice appeared in the public press. No more than minimal diligence could have been required to obtain an order in either the state or the federal courts nullifying a purge which was *per se* illegal. It is equally clear that the objectors waited until they could see how the election came out. Losing by a very narrow margin, they then rushed, as usual, to the federal courthouse. Such maneuvers ought to be discouraged.

In any event, the *en banc* opinion concludes with the only sensible solution reasonably available at the eleventh hour and fifty-ninth minute—a solution which inevitably would have occurred by operation of law if this case had never been docketed.

Therefore, I concur in the result.

GEE, Circuit Judge (concurring in the result):

I concur in the result reached by the Court but would go by another way. To me, the record presents overwhelming

---

4. In view of this modification we do not find it necessary to consider the action of the district court in bifurcating the primary election by holding it null and void as to all offices save that of Town Marshall, which

was won by a black. Cf. Perkins v. Matthews, S.D.Miss., 1971, 336 F.Supp. 6. The inexplicability of this holding is that a black also won one of the other races.

evidence of a selective application of state law, done out of time and when relief could not be had, to deprive sufficient Negro voters of their franchises to have affected the election results. I find this gross, spectacular and completely indefensible and would proceed upon that established ground.[1] I also agree that, the next regular election impending so nearly, a special election should not now be called in this troubled parish to fill terms which could not exceed a few months.

The majority opinion is cogent and persuasive, yet it seems to me necessarily to rest upon reasoning that, though no intent to discriminate existed, and although the state laws applied are color-blind and valid, yet where their application produces an unequal disenfranchisement between the races, the Constitution is offended. It is true, as the opinion notes, that the purge of voter lists was carried out at an illegal time, but I do not read this as significant to the rationale of the majority opinion.

In such a context as this, we are on sound footing when we admit extreme statistics as evidence of intent to discriminate. But where, as here, we leave undisturbed a specific finding of want of discriminatory intent and proceed on the effect *alone* of what was done, I fear we are planting dragon's teeth. For the most punctiliously even-handed and color-blind culling of voter lists may—indeed very nearly must—have a disproportionate effect on one segment or another of the electorate. I can find no footing on this logical precipice except at the top or at the bottom; either a discriminatory intent was present or it

was not. If it was not, as the majority says is the case here, I am unable to grasp the constitutional offense. It is well to say, and noble, too, that thoughtlessness can be as disastrous to private rights as willful schemes. But the Constitution does not adopt all noble thoughts, and I am not persuaded that it has adopted the concept that unintentional "discrimination" is offensive. Discrimination—in the sense of disproportionate effect—there will be. What we seek is that, when it occurs, it will be just that: unintentional.

CLARK, Circuit Judge, with whom SIMPSON, Circuit Judge, joins, dissenting:

The en banc opinion "voids" this election under a novel and, I submit, unsound rule. The court holds that in a post-election suit involving *unintentional* pre-ballot activity which has a disappropriate racial effect,[1] the election may be set aside unless the defendant Voter Registrar meets "a heavy burden" of showing that plaintiff knowingly, deliberately by-passed pre-election judicial relief. I continue to opt for the more restrictive rule applied by the panel—where a party challenges the pre-election activity of registration personnel, the plaintiff must show that such practices were not known to him, or discoverable with reasonable diligence, in time to have sought relief before the vote was taken. In addition to placing the burden of proof on the party who possesses the facts, the panel rule reinforces the solemnity of the electoral process by cutting off ex post facto attacks from those chargeable with constructive knowledge of inadvertences or errors. As the con-

---

1. See the discussion of Hadnott v. Amos, 394 U.S. 358, 89 S.Ct. 1101, 22 L.Ed.2d 336 (1969) and United States v. The Democratic Executive Committee of Barbour County, 288 F.Supp. 943 (M.D.Ala.1968), in the panel opinion herein. 476 F.2d, at 210–211.

1. All but one member of this court affirm the trial judge's determination that inten-

tional or gross discrimination is not involved here; neither is this case concerned with incidents occurring during the *voting* process. We are well committed to the proposition that wrongs of both these sorts may be attacked after an election is held without regard to any bypass or election of remedies rule.

cluding paragraph of Judge Gee's concurrence aptly demonstrates, application of the anomalous principle of "unintentional discrimination" is particularly paradoxical in election cases. Certainly its use to require elections to be rerun should be restricted to the smallest ambit practicable.

Furthermore, I cannot concur in the en banc opinion on the facts either. The record in this case simply will not support any other determination than that the plaintiffs well knew the essential facts which formed the basis for their belated complaint long enough before election was held to have permitted recourse to the courts without waiting to see if the returns from the polls were to plaintiffs' liking. The district court and panel opinions make it abundantly plain that everything done by the Registrar, Mrs. Bishop, was suspect by both white and black citizens of Tallulah because of the town's long history of racial controversy concerning voting. Her publication of the purge notice containing the names of 130 blacks and 11 whites was an immediately recognized red flag which plaintiffs sought to investigate. Indeed, the notice was improper on its face under Louisiana law. Her office was open for reinstatement on only four of the ten days required. Counsel for private plaintiffs advised this court on oral argument that when he attempted to view the registration books he was physically ejected from Mrs. Bishop's office. Taken together, these facts, which were known to the plaintiffs more than three weeks before the election, certainly formed a sufficient predicate for legal action. That still other improprieties regarding absentee balloting were later discovered is cumulative and in nowise detract from a determination that judicial assistance could have been invoked before the voting took place.

With regard that the court cannot discern the hazard to the practical functioning of the political process created by the sweeping rule it has adopted, I respectfully dissent.